Silas **TAYLOR**, Jr., Plaintiff,

v.

Henry **CISNEROS, in his capacity as Secretary of the United States Department of Housing and Urban Development, and the Board of Commissioners of the Housing Authority of Bayonne, Defendants.**

Civil A. No. 94–6317 (JCL).

United States District Court,
D. New Jersey.

Nov. 29, 1995.

**316**

John N. Ukegbu, Gregory G. Diebold, Adrian Castellanos, Hudson County Legal Services Corp., Jersey City, NJ, for Plaintiff.

Cheryl R. Clarke, Deputy Attorney General, Department of Law & Public Safety, Trenton, NJ, Jeanette M. Samra, Fitzpatrick & Waterman, Secaucus, NJ, for Defendants.

## OPINION

LIFLAND, District Judge.

Currently before the Court are cross-motions for summary judgment as to the constitutionality of N.J.S.A. 2A:18–61.1(n), the New Jersey "Anti–Eviction Act."[1] Under the act, a tenant's conviction for possession of drug paraphernalia entitles a residential landlord to regain summarily possession of his property. Plaintiff, who has twice plead guilty to possession of such paraphernalia, contends that termination of his tenancy will violate his rights guaranteed by the Double Jeopardy Clause, the Excessive Fines Clause, and the Due Process Clause.[2] For the reasons articulated below, the Court grants defendant's motion for summary judgment and denies Taylor's.

---

1. Secretary Cisneros was dismissed from this suit pursuant to a Stipulation of Dismissal filed on September 11, 1995.

2. Federal question jurisdiction exists because the case arises under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.

## Background [3]

Since 1988, Silas Taylor has resided by himself as a tenant in an apartment owned by the Bayonne Housing Authority. Stip. at ¶ 1. The apartment, located at 44 East 50th Street, is part of a low-income housing project owned and operated by the Board of Commissioners of the Housing Authority of Bayonne (hereinafter "Authority" or "defendant"). The Authority is a public body created pursuant to state statute, its commissioners are appointed by state and local officials and it receives governmental funding to provide affordable housing to low income households. *Id.* at ¶ 2.

Taylor is 38 years old, hearing and speech impaired, with a monthly social security grant of $497 representing his sole income. T31:1–21.[4] The fair market rent of plaintiff's apartment is $706, although his monthly rent is only $125. Stip. at ¶¶ 5–6. Given his low income, if Taylor is evicted he will likely end up on the streets since market-rate housing is unaffordable. T39:14–20. His parents live nearby, but the record suggests they would not have room for him.

On October 20, 1992, defendant plead guilty to the charge of possession of narcotics paraphernalia in violation of N.J.S.A. 2C:35–1 *et seq.*[5] The offense occurred on premises owned by the Authority located at 38 East 50th Street. Stip. ¶¶ 7–8. On February 3, 1994, a judgment of conviction was again entered in Bayonne Municipal Court adjudicating Taylor guilty of possession of narcotics paraphernalia in violation of N.J.S.A. 2C:35–1 *et seq.* This offense occurred on premises located next to property owned by the Authority at 53rd Street and Kennedy Boulevard, in Bayonne. *Id.* at ¶¶ 9–10. There is no allegation that Taylor actually possessed drugs, or engaged in distribution of contra-

band.[6] Given the aforementioned convictions, on November 29, 1994, the Authority served plaintiff with a notice terminating his tenancy. *Id.*, Ex. B. The notice explained that termination was premised upon the tenant's breach of Authority regulations and upon N.J.S.A. 2A:18–61.1(n). Taylor has not vacated his unit, but instead filed the instant § 1983 suit against the Authority. In the meantime, the Authority initiated summary dispossession proceedings in the Superior Court of New Jersey, Special Civil Part. The state court stayed the dispossession action pending this Court's resolution of Taylor's constitutional challenge. *Id.* at ¶ 11.

## New Jersey Landlord/Tenant Law

Since 1974, New Jersey has limited summary evictions from most residential housing to instances where the landlord can demonstrate "good cause." Absent one of the good causes enumerated in the "Anti-Eviction Act," N.J.S.A. 2A:18–61.1, the Housing Court may not evict a tenant, and a landlord must resort to the traditional, and more cumbersome, common law ejectment action. The statute, which dramatically altered the complexion of landlord/tenant law, is considered remedial legislation designed to address the serious housing shortage that has plagued New Jersey. *See A.P. Development v. Band*, 113 N.J. 485, 492, 550 A.2d 1220 (1988).

In 1990, the New Jersey Legislature amended the Act by adding several new grounds for eviction. Among those is subsection "n", which provides, in relevant part, that good cause for eviction exists if:

> The person has been convicted of or pleaded guilty to, or if a juvenile, has been adjudicated delinquent on the basis of an act which if committed by an adult would

---

3. The record for this case is a Joint Stipulation of Facts and a transcript of Mr. Taylor's Grievance Hearing presided over by Housing Authority officials.

4. "T" refers to the transcript of the grievance hearing conducted at the Housing Authority on February 21, 1995.

5. The Stipulation says he plead guilty to a violation of N.J.S.A. 2A:35–1, which the Court assumes is a typographical error.

6. Although he has never been formally declared incompetent, Taylor does not seem to comprehend at an adult or even competent child's level. His speech and hearing problems have prevented him from obtaining whatever drug rehabilitation assistance that is available. T30–31, 34. He was not, prior to his convictions, enrolled in any drug rehabilitation program.

constitute an offense under the "Comprehensive Drug Reform Act of 1987," N.J.S. 2C:35–1 *et al.* involving the use, possession, manufacture, dispensing or distribution of a controlled dangerous substance, controlled dangerous substance analog or drug paraphernalia within the meaning of that act within or upon the leased premises or the building or complex of buildings and land appurtenant thereto, or the mobile home park, in which those premises are located, and has not in connection with his sentence for that offense either (1) successfully completed or (2) been admitted to and continued upon probation while completing, a drug rehabilitation program pursuant to N.J.S. 2C:35–14 . . . .

Both parties agree that Taylor's February 1994 conviction [7] for possession of drug paraphernalia constitutes good cause under N.J.S.A. 2A:18–61.1(n), and subjects him to eviction unless such action would contravene plaintiff's constitutional rights.

## Discussion

■ The question before us is appropriate for summary judgment since the parties stipulate to the facts, thereby eliminating any genuine issues of material fact. *See Fed. R.Civ.P.* 56(c) (Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). While this simplifies the task, our inquiry is hampered somewhat by the absence of legislative history that could afford a definite sense of what the New Jersey Legislature intended when it added subsection "n" to the Anti–Eviction Act in 1990. The State's brief,[8] buttressed

by common sense and some decisional law, argues that the revision was a remedial measure designed to protect tenants from the scourge of drugs and drug-related violence. *See Housing Authority of Newark v. Smith,* 264 N.J.Super. 200, 204, 624 A.2d 95 (Law Div.1992) ("The statement by the Assembly Judiciary, Law and Public Safety Committee did not address the substantive change through the addition of these subsections [n, o, and p]. However, it is clear that these subsections were added as much for the protection of other tenants as for the benefit of landlords."). Taylor responds that the law effectuates no remedial goal, or, at a minimum, accomplishes an amalgam of punitive and remedial objectives, thus rendering it punishment for purposes of Double Jeopardy and Excessive Fines Clause analysis. Whether subsection "n" is properly characterized as remedial or as punishment is the key to this case, and requires an exploration of how federal courts have characterized analogous measures.

■ Before turning to the merits, a word about the nature of the challenge is in order. The plaintiff seems to want the Court to treat this as an attack on the application of subsection "n", directing our attention to the specific circumstances of Taylor's convictions and economic misfortune. But while the Housing Authority has notified Taylor of the termination of his tenancy, the New Jersey Superior Court has yet to apply the statute *to these facts. We therefore deem it inappropriate,* from a prudential and jurisdictional perspective, to consider this an "as applied" challenge. Accordingly, this Court will treat this action as a facial challenge to the constitutionality of subsection "n".[9]

---

7. Plaintiff contends that a state court would likely ignore the 1992 conviction since the Housing Authority repeatedly renewed Taylor's tenancy since that date, thus waiving that conviction as a ground for eviction. *See Montgomery Gateway East v. Herrera,* 261 N.J.Super. 235, 240, 618 A.2d 865 (App.Div.1992) ("[T]he granting of a new lease and acceptance of rent in that new term is so inconsistent with an intention to require a surrender of possession of the premises as to amount to an election to waive the right to terminate the tenancy because of the past rent defaults."). Notwithstanding this argument,

even one conviction constitutes a sufficient basis for a good cause eviction of Taylor.

8. Pursuant to 28 U.S.C. § 2403(b), the New Jersey Attorney General has intervened in this case.

9. The Court is satisfied that a justiciable case or controversy exists since Mr. Taylor has plead guilty to two drug-related offenses, a predicate for eviction under the statute, and the Authority has terminated his tenancy.

## What Constitutes Punishment?

 State action violates neither the Double Jeopardy Clause nor the Excessive Fines Clause unless it constitutes punishment. Accordingly, if subsection "n" of the Anti–Eviction Statute is not in part punishment, then Taylor's challenges on these bases must fail. The test is the same for each clause, and derives from the Supreme Court's recent decisions in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) and *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). *See United States v. Baird*, 63 F.3d 1213 (3d Cir.1995) (*Halper* analysis of whether a sanction is legally tantamount to punishment applies in excessive fines and double jeopardy contexts), *pet. for cert. filed*, 64 U.S.L.W. 3318 (October 17, 1995) (No. 95–630); *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1219 (9th Cir.1994) (same), *pet. for cert. filed*, 64 U.S.L.W. 3161 (August 28, 1995) (No. 95–346).

 Although it was long assumed that the Double Jeopardy and Excessive Fines Clauses limited the government's power to punish people only in criminal cases, in *Halper* the Court reoriented judicial focus away from the labels "criminal" and "civil." When determining if a measure is punishment, "the labels 'criminal' and 'civil' are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals and, conversely, that both punitive and remedial goals may be served by criminal penalties." *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901. A court must now undertake "a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Id.* at 448, 109 S.Ct. at 1901.

Given that the twin aims of punishment are deterrence and retribution, "a civil sanction that cannot fairly be said solely to serve a remedial purpose, *but rather can only be explained as also serving either retributive or deterrent purposes*, is punishment, as we have come to understand the term." *Id.* (emphasis added). Thus, *Halper* counsels that we examine the purposes that motivate governmental action to determine if a civil measure can only be understood as intended also to deter disfavored conduct or to exact retribution from an offender.[10]

Other language in *Halper* has engendered confusion because it seems to alter significantly the nature of the punishment examination. Just after the language quoted immediately above, the Court wrote: "We therefore hold that under the Double Jeopardy Clause a defendant punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, *but only as a deterrent or retribution.*" *Id.* at 449, 109 S.Ct. at 1902 (emphasis added). This passage suggests that a sanction intended both to deter and remedy undesirable conduct would not constitute punishment since one could not characterize it as "only a deterrent or retribution." *Id. See Bae v. Shalala*, 44 F.3d 489 (7th Cir.1995) (reading *Halper* to require that a sanction serve solely deterrent or retributive goals before it can be considered punishment); *Securities & Exchange Commission v. O'Hagan*, 901 F.Supp. 1461, 1995 WL 605986, *17 n. 6 (D.Minn.1995) (noting contradictory language in *Halper*).

 The Supreme Court's decision in *Austin* clarified whatever confusion *Halper*'s seemingly contradictory language may have created. In *Austin*, the Court utilized the

---

**10.** Employing this newly articulated test, *Halper* held that an application of the Civil False Claims Act, *see* 31 U.S.C. §§ 3729–3731, constituted a second punishment for the same offense in violation of the Double Jeopardy Clause. The defendant had, in an earlier proceeding, been convicted of 65 counts of Medicare fraud in violation of the criminal false-claims statute. *See* 18 U.S.C. § 287. For the criminal violations, the defendant was sentenced to two years in prison and fined $5,000. In the civil proceeding, Halper faced liability of more than $130,000, even though the government had been defrauded of only $585. Because Halper's $130,000 civil sanction far exceeded the cost of his investigation and prosecution—costs for which recompense has been deemed remedial—the facially civil sanction was in application so divorced from remedial goals as to cross the line between remedy and punishment. The Court remanded the case to determine how much of the civil penalty exceeded what was necessary to compensate the government.

test enunciated in *Halper* to hold that the civil *in rem* forfeiture statute, *see* 21 U.S.C. §§ 881(a)(4) and (a)(7), constitutes punishment, thereby implicating the Excessive Fines Clause. The Court made clear that for a measure to qualify as punishment, it need not serve solely retributive or deterrent purposes; rather, unless a sanction is solely remedial, it is punishment. As explicated in *Austin:*

> We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving in part to punish. We said in *Halper* that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term."

*Austin,* 113 S.Ct. at 2806. *See also $405,089.23 of U.S. Currency,* 33 F.3d at 1219 ("[A] sanction which is designed even in part to deter or punish will constitute punishment, regardless of whether is also has a remedial purpose."); *United States v. Hudson,* 14 F.3d 536, 540 (10th Cir.1994) ("We therefore must conclude that if a sanction is not exclusively remedial, but rather can only be explained as also affecting [sic] deterrence or retribution, it is punishment for double jeopardy analysis.").

To determine the purposes served by a sanction, courts have examined legislative history to ascertain what the enacting body intended, rather than focusing attention on a measure's effect. For example, in *United States v. Hudson,* the Tenth Circuit rejected the defendant's argument that debarment from the banking industry was a second punishment in violation of the Double Jeopardy Clause. The government imposed civil monetary penalties and barred Hudson from the banking industry after he illegally operated several banks. When the government subsequently sought to prosecute the defendant criminally, he raised double jeopardy as a bar, which the court rejected. The court did not find any definitive purpose on the part of Congress, in providing for civil penalties and

debarment, to accomplish objectives beyond remedying corruption within the banking sector. Convincing evidence needed to be adduced that the legislature had punitive intentions in mind before the court would judicially transform a remedy into punishment. "We are careful to note that a determination that a sanction is at least in part punishment requires that it *must* be explained as also serving as a deterrent or retribution, not merely that it *may* be so explained." *Hudson,* 14 F.3d at 540 (emphasis in original).

■ While debarment manifestly carried the "sting of punishment" in the eyes of the defendant, that alone could not recast a remedial measure as punishment because the analysis does not proceed from the defendant's perspective. Purposes, not deterrent effects, are paramount. *See id.* at 542. *See also Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7 ("This is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment. Rather, we hold merely that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated.") (citations omitted); *Manocchio v. Kusserow,* 961 F.2d 1539, 1542 (11th Cir.1992); *John Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995) (*Austin* makes clear "that the purpose and the intent of the civil sanction is the touchstone that determines the sanction's characterization as either remedial or punitive, rather than simply its impact.").

*Bae v. Shalala* also involved debarment from an industry due to illegal conduct. Here the plaintiff was barred from the generic drug industry after a conviction for violating the Generic Drug Enforcement Act. Although the issue was whether debarment violated the constitution's Ex Post Facto Clause, the court analyzed the problem within the *Halper* framework. The court explained that "[t]he punitive effects of the GDEA are merely incidental to its overriding purpose to safeguard the integrity of the

generic drug industry while protecting public health." *Bae,* 44 F.3d at 493. Even after examining the legislative history, which reflected the unmistakable intent of some Congressmen to promote deterrence, the court still concluded that the legislation was remedial.[11]

Of most recent vintage is *John Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995), in which the New Jersey Supreme Court rejected a facial challenge to the sex-offender registration and notification provisions of N.J.S.A. 2C:7–1–11, popularly known as "Megan's Law." In a lengthy and scholarly examination of the jurisprudence that has emerged from cases that trigger analysis of the punishment/remedy dichotomy, the court explained:

> [A] statute that can fairly be characterized as remedial, both in its purpose and implementing provisions, does not constitute punishment even though its remedial provisions have some inevitable deterrent impact, and even though it may indirectly and adversely affect, potentially severely, some of those subject to its provisions. Such a law does not become punitive simply because its impact, in part, may be punitive unless the only explanation for that impact is a punitive purpose: the intent to punish.

*Poritz,* 142 N.J. at 43, 662 A.2d 367. Since the New Jersey Legislature could reasonably conclude that registration and notification would effectively address and remedy the problem of sex-offender recidivism, the court considered "Megan's Law" remedial.

**Double Jeopardy Analysis**

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." [12] It protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and against multiple punishments for the same offense. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Taylor contends subsection "n" offends the third protection.

■ The threshold question for double jeopardy purposes is also whether the sanction is punishment. As mentioned at the outset of this opinion, no legislative history is available to inform the Court's assessment of the purposes served by subsection "n". However, looking at the statute as a whole, as it has evolved through two separate enactments, there is no evidence to suggest that subsection "n" was intended as punishment; indeed, the evidence points in the opposite direction.

The Court cannot ignore the clear import of the statutory language which indicates that the Legislature sought to protect tenants from drugs and other related criminal activity by providing as cause for eviction conviction or pleading guilty to an offense under the Comprehensive Drug Reform Act of 1987 (N.J.S.A. 2C:35–1 *et seq.*). *See Housing Authority of Newark v. Smith,* 264 N.J.Super. 200, 204, 624 A.2d 95 (Law Div. 1992). Evicting an insidious tenant is a rational and effective means of protecting all other tenants from activity antithetical to their health, safety and welfare.

Also significant to the analysis is the Legislature's placement of subsection "n" into the decidedly remedial Anti–Eviction Act enacted in 1974. *See A.P. Development,* 113 N.J. at 492, 550 A.2d 1220. In its first incarnation, the Act "dramatically changed the rights of landlords and owners by prohibiting the ejectment of residential tenants or lessees simply because their tenancies or

---

11. The Seventh Circuit in *Bae* seems to have misapprehended the scope of *Halper* and construed the decision too narrowly. That court asked whether the subject sanction served solely punitive purposes, rather than whether the measure served solely *remedial* purposes. Nevertheless, given precedent from other circuits, the Court is confident that *Bae* would have reached the same result had it hewed more closely to *Halper,* as clarified in *Austin.*

12. The Double Jeopardy Clause has been applied to the states via incorporation in the Fourteenth Amendment's Due Process Clause. *See, e.g., United States v. DiFrancesco,* 449 U.S. 117, 131 n. 12, 101 S.Ct. 426, 434 n. 12, 66 L.Ed.2d 328 (1980); *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

leases had expired." *Chase Manhattan Bank v. Josephson*, 135 N.J. 209, 219, 638 A.2d 1301 (1994). When the Legislature revisited the statute in 1990, the newly-authorized good causes for eviction were engrafted onto the existing remedial structure.

 To be sure, placement in a civil statute will not itself immunize a measure from being considered punishment. *Cf. Halper*, 490 U.S. at 447, 109 S.Ct. at 1901. But there is no evidence that casts doubt on the New Jersey Legislature's remedial purpose. For example, the remedy created by subsection "n"—eviction of an undesirable tenant—does not go further than necessary to effectuate the statute's purpose. This contrasts with *Halper*, where the law subjected a perpetrator of Medicare fraud to an exaction that vastly exceeded the sum necessary to compensate the government for the costs of investigating and prosecuting the defendant.

Moreover, the statute applies to private and public housing alike, setting it apart from the forfeiture or debarment measures which exclusively empower governmental action that effectuates remedial and, sometimes, punitive goals. Since punishment is generally the province of government alone, this law's empowerment of both public and private landlords convinces the Court that subsection "n" is purely remedial.

Taylor argues that the statute is punitive because the Authority's dilatory conduct contradicts an intention to rid the project of an undesirable tenant that imperils the quiet enjoyment of other residents. Even if one accepts that the Authority's leisurely pace [13] in terminating Taylor's tenancy suggests he posed a less-than-urgent danger to other ten-

ants, this does not turn the statute on its face into a punitive enactment.

 Plaintiff is left with the argument that eviction will throw one of society's most vulnerable members on the street, due to conduct for which he was already punished. Although the Court appreciates, and profoundly laments, the hardships that will likely befall Mr. Taylor upon eviction, the cases teach that we examine the statute's purposes, not its effect on the plaintiff.[14]

*Doe v. Poritz* is particularly persuasive in this regard. There the New Jersey Supreme Court grappled with the question of whether registration and community notification of a sex-offender's presence violated, *inter alia*, the Double Jeopardy Clause. Even though community notification could potentially lead to lost employment opportunities, social stigma, and vigilantism directed at the plaintiff, Megan's Law did not constitute punishment. It remained a legitimate remedy devised to address a threat to public welfare. To the extent that subsection "n" and Megan's Law both embody strategies to protect the public—in one case landlords and tenants, and in the other, neighbors of convicted sex offenders—the biting effects for plaintiffs do not transform remedy into punishment. *See also Halper*, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7; *Hudson*, 14 F.3d at 542; *Manocchio*, 961 F.2d at 1542. Thus, in the absence of a clear indication that the New Jersey Legislature intended that subsection "n" effectuate retributive or deterrent goals, this Court will not consider the measure punishment. *See Bae*, 44 F.3d at 494, quoting *Selective Service System v. Minnesota Pub-*

---

13. The Authority did not terminate Taylor's tenancy until his second conviction.

14. Although not a factor in the analysis, the Court notes that despite its resolution of this motion, plaintiff will still have some recourse in state court. Pursuant to the Tenant Hardship Act, a court having jurisdiction in the matter may stay the issuance of a warrant of removal for up to six months if "it shall appear that by the issuance of the warrant or writ the tenant will suffer hardship because of the unavailability of other dwelling accommodations...." N.J.S.A. 2A:42–10.6. A court may not issue or continue a stay if 1) rent arrearages plus court costs and current rent have not been paid, 2) the tenant is

disorderly, 3) the tenant wilfully damages the premises or 4) the tenant fails to pay future rent as it becomes due. *See id.* Moreover, even if a judgment for possession has been entered, a tenant can petition the court to vacate the judgment on equitable grounds pursuant to Rule 4:50–1. *See Housing Authority of the Town of Morristown v. Little*, 135 N.J. 274, 287, 639 A.2d 286 (1994) (Affirming the trial court's exercise of discretion in vacating an earlier judgment for possession, the Supreme Court noted that a public housing authority is "a publicly-subsidized provider of housing of last resort, [and] is subject to public-policy responsibilities not generally imposed on private landlords.").

*lic Interest Research Group*, 468 U.S. 841, 855 n. 15, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984) ("The Supreme Court has consistently required 'unmistakable evidence of punitive intent' to characterize a sanction as punishment."); *Poritz*, 142 N.J. at 57, 662 A.2d 367; *Hudson*, 14 F.3d at 540 ("We are careful to note that a determination that a sanction is at least in part punishment requires that it *must* be explained as also serving as a deterrent or retribution, not merely that it *may* be so explained.") (emphasis in original).

 Plaintiff's final argument is that even if his eviction serves a remedial purpose, given his misconduct, it is so disproportionate as to constitute punishment. This argument relies on *Halper*, which held that a $130,000 civil False Claims Act penalty crossed the line from remedy to punishment because it was so disproportionate to the amount of money the government expended to investigate and prosecute the fraud. This is, of course, an "as applied" argument. Furthermore, Taylor ignores *Halper*'s limiting language: "What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. The instant case does not involve a monetary-penalty statute designed to make the government whole.

The Court holds that subsection "n" does not impose a second punishment in violation of the Double Jeopardy Clause.

## Excessive Fines Analysis

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." [15] As with the Double Jeopardy Clause, plaintiff must, as a preliminary matter, demonstrate that subsection "n" constitutes punishment.

Taylor contends his eviction from public housing is tantamount to an excessive fine, analogizing his case to *United States v. Robinson*, 721 F.Supp. 1541 (D.R.I.1989). In that case, the court held that compelling a recipient of Section 8 rental assistance to surrender her tenancy pursuant to a criminal forfeiture action would disproportionately punish the defendant, thereby violating the Eighth Amendment. The court based this holding on the fact that "[a]n order of forfeiture here would be, in effect, a sentence of homelessness for the defendant and her three young children." *Id.* at 1544. This case does not help Taylor as much as he would like, however, because it involved a criminal forfeiture statute. Thus, the threshold requirement for Eighth Amendment application—that state action be intended to punish—was clearly satisfied. For the reasons explained above, plaintiff here cannot demonstrate that subsection "n" of the Anti-Eviction Act constitutes punishment. Accordingly, the Court need not reach the question of whether the punishment is excessive.

## Due Process Analysis

 Lastly, plaintiff makes a substantive due process challenge, arguing that subsection "n" imposes a punishment so "plainly arbitrary and oppressive as to violate the due process clause." *Southwestern Telegraph and Telephone v. Danaher*, 238 U.S. 482, 35 S.Ct. 886, 59 L.Ed. 1419 (1915). This argument is unavailing since the Court has already concluded that the challenged statute does not constitute punishment. Furthermore, subsection "n" is a rational strategy to effectuate New Jersey's legitimate goal of protecting landlords and tenants from the evils associated with tenant drug use. *See United States v. Carolene Products Co.*, 304

---

15. While the Supreme Court has never addressed whether the Eighth Amendment's Excessive Fines Clause applies to the states, the Court has held that other Eighth Amendment guarantees apply to the states. *See Robinson v. California*, 370 U.S. 660, 666–67, 82 S.Ct. 1417, 1420–21, 8 L.Ed.2d 758 (1962) (Cruel and Unusual Punishment Clause); *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971) (Court assumed that Excessive Bail Clause applies to states). As Justice O'Connor has explained: "I see no reason to distinguish one clause of the Eighth Amendment from another for purposes of incorporation, and would hold that the Excessive Fines Clause also applies to the states." *Browning–Ferris Industries v. Kelco Disposal*, 492 U.S. 257, 284, 109 S.Ct. 2909, 2925, 106 L.Ed.2d 219 (1989) (O'Connor, J., concurring in part and dissenting in part).

**324**

U.S. 144, 152 and n. 4, 58 S.Ct. 778, 783–84 and n. 4, 82 L.Ed. 1234 (1938) (articulating rational basis standard). The Court holds as a matter of law, therefore, that subsection "n" does not contravene substantive due process.