

1996 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

12-6-1996

# Taylor v. Secretary HUD

Precedential or Non-Precedential:

Docket 95-5873

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Taylor v. Secretary HUD" (1996). *1996 Decisions.* Paper 7.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/7

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-5873


SILAS TAYLOR, JR.,

Appellant

v.

HENRY CISNEROS, in his capacity as Secretary of
the United States Department of Housing and
Urban Development; BOARD OF COMMISSIONERS OF
THE HOUSING AUTHORITY OF BAYONNE

STATE OF NEW JERSEY,

Intervenor


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 94-06317)


Argued October 7, 1996

BEFORE:  MANSMANN, GREENBERG, and GARTH, Circuit Judges

(Filed: December 6, 1996)


John N. Ukegbu
Gregory G. Diebold (argued)
Hudson County Legal Services
Corporation
574 Newark Avenue
Jersey City, NJ 07306

Attorneys for Appellant

Jeanette M. Samra (argued)
Fitzpatrick & Waterman
400 Plaza Drive
P.O. Box 3159
Secaucus, NJ 07096

Attorneys for appellee Board
of Commissioners of the
Housing Authority of Bayonne

                         Peter Verniero
                         Attorney General
                         Cheryl R. Clarke (argued)
                         Deputy Attorney General
                         Joseph L. Yannotti
                         Assistant Attorney General
                         Office of the Attorney General
                         of New Jersey
                         Richard J. Hughes Justice
                         Complex
                         Trenton, NJ 08625

                                Attorneys for appellee State
                                of New Jersey

OPINION OF THE COURT


GREENBERG, Circuit Judge.

        Silas Taylor, Jr., appeals from a final judgment entered on November 29, 1995.  In his complaint he sought a judgment declaring that the actions of the appellee, Housing Authority of Bayonne, New Jersey, in terminating his tenancy and seeking his eviction in a proceeding in the New Jersey Superior Court, predicated on his convictions on pleas of guilty in a New Jersey municipal court to possession of drug paraphernalia on the authority's premises, violated certain of his constitutional rights.  While Taylor originally also sought relief against the secretary of the United States Department of Housing and Urban Development, the issues relating to the secretary are not involved on this appeal and the secretary is no longer a party to the case.  The State of New Jersey has intervened pursuant to 28 U.S.C. § 2403(b) supporting the position of the Housing Authority.  This appeal raises the question of whether the Housing Authority is barred from seeking Taylor's eviction by reason of his punishment for the possession of the drug paraphernalia in the municipal court by the Double Jeopardy Clause of the Fifth Amendment or the Excessive Fines Clause of the Eighth Amendment.


I. BACKGROUND AND PROCEDURAL HISTORY

        The district court set forth the background of the case in its opinion reported as Taylor v. Cisneros, 913 F. Supp. 314 (D.N.J. 1995).  Since 1988 Taylor has resided in an apartment in low-income housing in Bayonne, New Jersey, owned and operated by the Housing Authority.  The Department of Housing and Urban Development subsidizes his rent so that he pays only $125 per month for an apartment with a fair monthly rental value of $706. Taylor is both hearing and speech impaired and his sole income is a monthly social security disability payment of $497.

Consequently, he cannot afford to pay market rent and if evicted from the Bayonne apartment will have no place to live and will end up on the streets homeless.

On October 20, 1992, Taylor pleaded guilty to possession of narcotics paraphernalia in the Bayonne Municipal Court, a violation of the Comprehensive Drug Reform Act of 1987, N.J. Stat. Ann. §§ 2C:35-1 et seq. (West 1995). Taylor committed this offense on the property of the Housing Authority in which he resides, though not in his particular apartment. On February 3, 1994, Taylor again pleaded guilty to the commission of the same offense, though he committed this second offense on a different day and on property next to that of the Housing Authority rather than on its property. The Housing Authority and the State do not contend either that Taylor possessed drugs on the Housing Authority property or that he distributed drugs. The municipal court sentenced Taylor to 30 days imprisonment and fined him $625 on the second conviction. While the parties do not specify the exact sentence imposed on the first conviction, they agree that it was similar to that imposed on the second conviction.

New Jersey is quite protective of tenants in residential units and has adopted an Anti-Eviction Act, applicable to both public and private housing, delineating the circumstances in which a tenant can be removed from a rental unit. N.J. Stat. Ann. § 2A:18-61.1 (West Supp. 1996). One such circumstance is where the tenant has been convicted of or pleaded guilty to an offense under the Comprehensive Drug Reform Act of 1987, N.J. Stat. Ann. § 2C:35-1 et seq., involving possession of drug paraphernalia "within or upon the leased premises or the building or complex of buildings and land appurtenant thereto . . . in which those premises are located." N.J. Stat. Ann. § 2A:18-61.1n (subsection "61.1n"). The parties agree that Taylor pleaded guilty to an offense within the foregoing category. Thus, without question, the Housing Authority may evict Taylor under the Anti-Eviction Act if the New Jersey courts apply the act as it is written.

Pursuant to the Anti-Eviction Act, on November 29, 1994, the Housing Authority served notice on Taylor that it was requiring his removal from its premises. Taylor responded by filing this action in the district court under 42 U.S.C. § 1983, charging that his eviction would violate his rights under the Double Jeopardy Clause because he previously had been sentenced in the municipal court for possession of the drug paraphernalia and that his eviction would violate the Excessive Fines Clause of the Eighth Amendment. While he also claimed that his eviction would violate the Due Process Clause of the Fourteenth Amendment, he does not raise that contention on this appeal. The Housing Authority then instituted a summary dispossession proceeding in the Superior Court of New Jersey, Hudson County, Law Division, Special Civil Part, against Taylor seeking his eviction. The state court, however, on Taylor's motion, has stayed those proceedings pending the disposition of this case in the federal courts. As we have indicated, the State of New Jersey has intervened on behalf of the Housing Authority.

Inasmuch as the facts germane to this case are not in

dispute, the district court decided the case on cross-motions for summary judgment. Initially the court pointed out that the parties disagreed as to whether it should consider the constitutional questions as a facial challenge, or on an "as applied" basis, i.e., consider "the specific circumstances of Taylor's convictions and economic misfortune." Taylor, 913 F. Supp. at 318. The court concluded that inasmuch as the New Jersey state courts had not applied the facts to the circumstances of this case "it [was] inappropriate, from a prudential and jurisdictional perspective, to consider this an 'as applied' challenge." Id. Thus, the court treated the case as a facial challenge to the Anti-Eviction Act. Id.

The court then stated that "[s]tate action violates neither the Double Jeopardy Clause nor the Excessive Fines Clause unless it constitutes punishment." Id. at 319. Thus, the court considered whether proceedings under subsection 61.1n are intended to punish the tenant. The court said that the label put on a proceeding does not determine if it is civil or criminal, i.e., remedial or punitive, and that the court must "undertake 'a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve.'" Id. (quoting United States v. Halper, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901 (1989)). The court then cited Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801 (1993), for the proposition "that for a measure to qualify as punishment, it need not serve solely retributive or deterrent purposes; rather, unless a sanction is solely remedial, it is punishment." Taylor, 913 F. Supp. at 320.

The court indicated that Taylor advanced the aspect of the Double Jeopardy Clause involving the protection "against multiple punishments for the same offense." Id. at 321. The court said that proceedings under subsection 61.1n were not intended to be punitive. In this regard, it pointed out that the eviction of "an insidious tenant is a rational and effective means of protecting all other tenants from activity antithetical to their health, safety and welfare." Id. The court also noted that because the legislature placed subsection 61.1n in remedial legislation, the Anti-Eviction Act, and because the act applies to both public and private landlords, subsection 61.1n is remedial. Id. at 321-22. The court held that proceedings under subsection 61.1n would not be punitive merely because of their impact on Taylor.

The court also held that the Excessive Fines Clause could not apply because the proceedings under subsection 61.1n were not punitive. The court then rejected the Due Process Clause argument on the same basis.

As a result of its conclusions, the district court entered the judgment in favor of the appellees from which Taylor appeals. We exercise plenary review on this appeal.


II. DISCUSSION

a. The parties' contentions

Taylor argues that the district court erred in treating the action as a facial attack on subsection 61.1n. He points out that the Anti-Eviction Act upon its adoption in 1974 "'dramatically changed the rights of landlords and owners by prohibiting the ejectment of residential tenants or lessees simply because their tenancies or leases had expired.'" Br. at 8 (quoting Chase Manhattan Bank v. Josephson, 638 A.2d 1301, 1306 (N.J. 1994)). He indicates that in 1990 the legislature added subsection 61.1n to the Anti-Eviction Act and he then forthrightly acknowledges that "based on [his] February, 1994, municipal court conviction for possession of drug paraphernalia, and under [subsection 61.1n, he] is subject to eviction from his apartment." Br. at 8.

Taylor next explains that he does not challenge the constitutionality of subsection 61.1n in general, but rather argues that his eviction would violate the Double Jeopardy and Excessive Fines Clauses. Distinguishing between facial and as applied challenges, he contends that this case involves an as applied challenge because there is a difference between situations in which a party claims that a statute in all its applications is unconstitutional and cases in which a party acknowledges that a statute might be applied constitutionally in some circumstances but is unconstitutional as applied to that party. He cites United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100 (1987); Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193 (1982); and Jacobs v. The Florida Bar, 50 F.3d 901, 905-06 (11th Cir. 1995), to illustrate the distinction between facial and as applied challenges.

Taylor "readily concedes that he could not succeed in a facial challenge to the statute." Br. at 11. He then explains that:

> there are undoubtedly many situations where a tenant could legitimately be evicted for drug related activities without offending the Constitution – using the apartment to deal drugs, for example. But more importantly, the very nature of the plaintiff's challenge implicates consideration of individual circumstances. A fine cannot be 'excessive' or an eviction 'punitive' absent an analysis of the unique circumstances in which the individual reposes. Thus, the Constitutional violations complained of are simply not susceptible to facial attack.

Id. at 11. Taylor then continues that while "it may be inappropriate to consider an 'as-applied' challenge to a statute where there is ambiguity in the statute itself or where it is unclear that the statute applies to plaintiff's conduct, such is not the case here." Id. at 12. Rather, Taylor acknowledges that subsection 61.1n as written provides for his eviction.

Taylor argues that application of subsection 61.1n to him would constitute punishment because, notwithstanding the

remedial character of an eviction, an eviction also has a "retributive function." Br. at 18. He claims that an eviction constitutes a forfeiture, citing, inter alia, A.P. Dev. Corp. v. Band, 550 A.2d 1220, 1228 (N.J. 1988), and Carteret Properties v. Variety Donuts, Inc., 228 A.2d 674, 680 (N.J. 1967). His eviction, he says, should be regarded as an excessive fine because his offenses, which he does not seek "to minimize," nevertheless were "minor in nature." Br. at 23. Furthermore, he points out that he did not commit an offense in his apartment. He also notes that he is receiving a rental subsidy of $581 per month or $6,972 per year, based on the difference between the fair market rental value of his apartment, $706 per month, and his rent of $125. He argues that he could remain in the apartment for ten years or 20 years so that his eviction could cause him a loss of more than $100,000 in subsidies.

He then argues that his eviction would violate the Double Jeopardy Clause because he was punished in the Bayonne Municipal Court for his drug paraphernalia offenses. He emphasizes that the municipal court prosecutions were in the name of the State of New Jersey and that the Housing Authority should be regarded as a state agency. He contends that his eviction would not serve a remedial purpose, and even if it did, it should be regarded as a punishment for double jeopardy purposes because it is a remedy disproportionate to his conduct.

The State of New Jersey in its original brief argues that the district court properly considered Taylor's challenge to subsection 61.1n on a facial basis because, notwithstanding his contention that he was seeking relief only for himself, "the decision in this matter would affect all tenants who are subject to" subsection 61.1n. Br. at 9. On the merits, the State contends that the Anti-Eviction Act is intended to protect tenants and that subsection 61.1n furthers this remedial purpose "by eliminating drug activity from the buildings in which they reside and areas surrounding those buildings." Id. at 13. Thus, subsection 61.1n was intended to protect tenants from people exactly like Taylor. Id.

The State in its original brief cites our opinion in Artway v. Attorney General, 81 F.3d 1235 (3d Cir. 1996), as the then most recent authoritative precedent defining what constitutes punishment for double jeopardy, ex post facto, and due process purposes. It points out that under Artway a measure must pass three tests so as not to constitute punishment: its actual or subjective purpose must not be to punish; its objective purpose must not be punitive; and its effects must not amount to punishment. It argues that subsection 61.1n passes all three tests, and thus a proceeding under it does not constitute punishment. Consequently, in the State's view subsection 61.1n does not violate the Double Jeopardy Clause and, by a similar analysis, cannot violate the Excessive Fines Clause.

The State modified its position after the Supreme Court decided United States v. Ursery, 116 S.Ct. 2135 (1996), which we discuss below, after the State filed its brief. In a letter pursuant to Fed. R. App. P. 28(j), the State argues that Ursery has undermined Artway and thus Artway should not be applied in

this case.  The State argues that we should affirm because, under Ursery, Taylor is not being punished by the eviction proceedings for either double jeopardy or excessive fines purposes.  The Housing Authority joins in the position of the State.

## b. Our disposition

As we have explained, the parties dispute whether the district court properly considered the case on a facial as opposed to an as applied basis.  While Taylor advances the as applied argument primarily in connection with his excessive fines claim, he also raises it with respect to his double jeopardy argument.  We, however, will not linger on the distinction between a facial and an as applied challenge because we find that subsection 61.1n is constitutional as applied to Taylor.

In three recent cases the Supreme Court and this court have had occasion to consider double jeopardy and excessive fines issues.  First, in Artway we considered a challenge to the registration provisions of New Jersey's Megan's Law which require that certain sex offenders register with law enforcement authorities upon completion of their sentences.  Artway involved double jeopardy, ex post facto, and bill of attainder challenges to the law but did not implicate the Excessive Fines Clause.  We found in Artway that the "threshold question under each clause [was] whether the registration provisions of Megan's Law impose 'punishment.'  If registration does not impose punishment, our inquiry with respect to the registration issue is at an end." Artway, 81 F.3d at 1253.  After a comprehensive analysis of numerous precedents, in Artway "we develop[ed] a multi-part test that looks to the legislature's subjective purpose in enacting the challenged measure, its 'objective' purpose in terms of proportionality and history, and the measure's effects."  Artway, 81 F.3d at 1254.

Under the first Artway test, a law will provide for punishment if the legislature's subjective intention is that it punish.  Id. at 1263.  The second Artway test is an objective purpose analysis which asks whether, regardless of the legislature's intent in enacting the law, the law has an objective purpose to punish.  Id.  The objective purpose analysis has three parts:  first, can the law be explained solely by a remedial purpose; if not it is punishment.  Second, if the law's objective purpose is remedial does an historical analysis show that the measure traditionally has been regarded as punishment; if so then the measure will be punishment unless its text or legislative history demonstrates that the measure is not punishment.  The third component of the objective purpose analysis considers both the measure's "deterrent and salutary purposes."  Id. at 1263.

In Artway we also held that even if a measure passes the subjective and objective purpose tests, if the effects of the measure are sufficiently severe, then regardless of how they are justified, the measure must be considered punishment.  Id. at 1263.  The effects test, however, is difficult to apply because the cases do not establish a clearly defined line distinguishing

between measures that are or are not punishment. Id. at 1266. Thus, in Artway we pointed out that while imprisonment and revocation of citizenship constitute punishment, loss of a profession, a right to work, or the termination of social security benefits do not. Id. at 1266. Yet we do not doubt that the person against whom the remedy in the latter three situations is applied feels that he or she has been punished.

Within a few weeks of our opinion in Artway we decided United States v. Various Computers, 82 F.3d 582 (3d Cir.), cert. denied, 117 S.Ct. 406 (1996). In Various Computers the claimant in a civil forfeiture proceeding had pleaded guilty to a charge of unauthorized use of and possession of credit cards. The government then instituted a civil in rem forfeiture against the property the claimant had acquired by the crime even though the court had ordered the claimant to make restitution to the store where he acquired the property. We rejected the claimant's double jeopardy and excessive fine arguments because we held that the forfeiture of the property was not punishment even though in a sense the claimant already was paying for the property through making restitution. Id. at 589. Because the property was the fruit of the crime, the claimant "had no legal rights of ownership" over the property. Id. at 589.

Finally, in United States v. Ursery, 116 S.Ct. 2135 (1996), the Supreme Court held that the civil forfeitures involved in that case and civil forfeitures generally, "do not constitute 'punishment' for purposes of the Double Jeopardy Claim." Id. at 2138. Ursery is particularly significant because it drew a sharp distinction between civil penalties and civil forfeitures. The Court discussed United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, a case on which Taylor relies. In Halper the Court found that a treble damages action under the False Claims Act against a person already criminally convicted for the conduct was punitive and therefore was barred by the Double Jeopardy Clause. The Court distinguished Halper from the situations before it in Ursery as Ursery involved civil forfeitures rather than civil penalties. Ursery, 116 S.Ct. at 2144. The Court explained that it "is difficult to see how the rule of Halper could be applied to a civil forfeiture." Id. at 2145. In a passage, significant for our purposes in view of Taylor's emphasis of the value of the subsidized lease that he would lose in an eviction, the Court in Ursery said that, unlike in civil penalty cases, "for Double Jeopardy purposes we have never balanced the value of property forfeited in a particular case against the harm suffered by the Government in that case." Ursery, 116 S.Ct. at 2145.

Artway, Various Computers, and Ursery as well as Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, inform our result. We analyze the case for double jeopardy purposes both under Artway and Ursery, making the Artway analysis first. We then resolve the excessive fine issue by following Austin and Various Computers. In Artway we "attempted to harmonize a body of doctrine that has caused much disagreement in the federal and state courts. We realize[d], however, that our synthesis is by no means perfect. Only the Supreme Court knows where all the

pieces belong."  Artway, 81 F.3d at 1263.  This continues to be true and we do not attempt here to refine the synthesis in Artway.  Instead, we determine whether the application of subsection 61.1n in this case violates the Double Jeopardy and Excessive Fines Clauses and we say with some degree of confidence that it does not.

Our analysis requires us to review the Anti-Eviction Act.  The Act provides that for certain residential properties a tenant may be removed only for "good cause."  N.J. Stat. Ann. § 2A:18-61.1 (West Supp. 1996).  Good cause may be related to conduct of the tenant, e.g., the failure to pay rent, id. § 2A:18-61.1a, or it may have nothing to do with the conduct of the tenant, e.g., the owner seeks to retire the building from residential use, id. § 2A:18-61.1h.  Subsection 61.1n relates to a tenant's activities, but it is nothing more than the legislature's recognition that it is unreasonable to deny a landlord the right to terminate a lease when its property is being used for purposes unlawful under the New Jersey Comprehensive Drug Reform Act of 1987.  Yet subsection 61.1n does not require that the landlord bring an action to remove a tenant who violates the drug law.  Thus, subsection 61.1n leaves the decision on whether to remove a tenant to the judgment of the landlord which, after all, does have an interest in keeping its property free from criminal activity.

We do not doubt that if New Jersey did not have an Anti-Eviction Act so that landlord-tenant relationships were regulated solely by agreement, a landlord and tenant could agree in their lease for the removal of a tenant who violated the drug laws on the landlord's premises.  See Chase Manhattan Bank v. Josephson, 638 A.2d at 1306 ("At common law, the terms of the tenancy controlled the right of the owner or landlord to eject the tenant, whether that tenancy was a term of years or a periodic tenancy."); 25 Fairmont Ave., Inc. v. Stockton, 326 A.2d 106, 110 (N.J. Super. Ct. Law Div. 1974) (before Anti-Eviction Act, common law governed the substantive terms of leases).  Furthermore, we do not doubt that the landlord could use a tenant's conviction for violating the drug laws on its premises in an eviction proceeding as evidence to establish the tenant's violation of the lease.  State of New Jersey v. Gonzalez, 667 A.2d 684, 690 (N.J. 1995).  In the circumstances, it would be far-fetched to hold that the legislature intended to punish a tenant violating the drug laws by the enactment of subsection 61.1n.  To the contrary, inasmuch as the legislature authorized, but did not require, the landlord to bring removal proceedings under subsection 61.1n when the tenant was convicted of or pleaded guilty to an offense under the drug laws it did not intend to punish tenants by authorizing such proceedings.  Rather, it merely permitted the landlord to protect its property from a tenant violating the law on the property.

In this regard we reiterate that the Anti-Eviction Act allows removal for causes wholly unrelated to the tenant's conduct.  Thus, a tenant may be removed because of the landlord's need to comply with applicable laws, to retire the property from residential use, to make reasonable changes in a lease at the

lease's termination, to make certain types of conversions of the property, and for other reasons as well. N.J. Stat. Ann. §§ 2A:18-61.1g, h, i, k. The legislature did not intend to punish the tenants when it authorized such removals and it did not intend to punish them by authorizing their removal under the conditions set forth in subsection 61.1n either. Consequently, subsection 61.1n passes the subjective Artway test.

Subsection 61.1n plainly passes Artway's objective test. The subsection can be explained solely by the remedial purpose of allowing the landlord to remove a tenant who is using the landlord's premises for an unlawful purpose. No landlord should have to suffer the use of its property for unlawful purposes. Indeed, under both federal and New Jersey law a landlord in some circumstances runs the risk of its property being forfeited if it is aware of unlawful drug activity on its premises and does not take steps to end that activity. See 21 U.S.C. § 881(a)(7); N.J. Stat. Ann. §§ 2C:64-1, 5(b) (West 1995). Furthermore, it is in the interest of the other tenants that drug activities not be conducted on the premises. Of course, removal of a tenant from a property traditionally has not been regarded as a punishment. Thus, tenants have been removed for all sorts of reasons, e.g., someone else will pay more money for the lease, and, as we have indicated, tenants can be removed under the Anti-Eviction Act in circumstances that could not possibly be regarded as punitive. Finally, subsection 61.1n passes the objective purpose analysis considering the measure's "deterrent and salutary" purposes.

As we set forth above, Artway indicated that severe effects can lead to a measure being regarded as a punishment. Taylor argues that the effects on him from being removed will be extremely severe and we believe that he argues that we should consider the case on an as applied basis for exactly that reason. As we also have indicated, we have taken into account his circumstances in deciding this matter. Nevertheless, we find that they are not determinative. We reiterate that the Supreme Court in Ursery stated that "for Double Jeopardy purposes we have never balanced the value of property forfeited in a particular case against the harm suffered by the Government in that case." Ursery, 116 S.Ct. at 2145. Thus, we conclude that for double jeopardy purposes the loss of a lease should be regarded as a permissible effect. This result is hardly surprising; if the termination of social security benefits, which can be critical to a disabled or elderly person, is not a punishment then why should the loss of a lease be a punishment? See Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367 (1960).

Up until this point in our opinion we have assumed the applicability of Artway. That assumption, however, may not be correct. Artway dealt with a registration law. But, following Artway, we decided Various Computers and held that the civil forfeiture there was not punishment and thus was not precluded by the Double Jeopardy Clause notwithstanding the claimant's earlier prosecution for the offense which led to him acquiring possession of the property to be forfeited. Then, in Ursery, the Supreme Court held that civil forfeitures generally do not constitute

punishment for purposes of the Double Jeopardy Clause. Ursery, 116 S.Ct. at 2138. In Taylor's brief, which he filed before the Court filed its opinion in Ursery, he goes to great lengths to argue that a judgment of eviction against him would result in a forfeiture. Furthermore, he points out that the Supreme Court of New Jersey has said that a "forfeiture is in the nature of a penalty." Lehigh Valley R.R. Co. v. Chapman, 171 A.2d 653, 660 (N.J. 1960).

Yet, the Supreme Court of New Jersey's characterization of a forfeiture as a penalty is not controlling in a Fifth Amendment double jeopardy analysis. For that analysis we look to the opinions of the Supreme Court of the United States which court in Ursery indicated that a civil forfeiture is not punishment. Thus, Taylor's characterization of the loss of his lease as a forfeiture is counterproductive. Of course, if Ursery controls this case, then since civil forfeitures categorically are excluded from being punishment, our Artway analysis is overinclusive.

Instead, under Ursery we need ask merely whether the legislature intended that eviction proceedings under subsection 61.1n to be criminal or civil and whether the proceedings are so punitive in fact that they may not be viewed as civil regardless of the legislature's intent. See Ursery, 116 S.Ct. at 2147. Clearly, an eviction is a civil proceeding, and, for the reasons we already have set forth and particularly for the historical reason that evictions are not punitive as they frequently are not dependent on a demonstration that the tenant was culpable, we conclude that an eviction should be viewed as civil in nature. Nevertheless, we do not decide whether the forfeiture involved here is governed by Ursery for double jeopardy purposes because, as we have explained, even under Artway Taylor's double jeopardy argument fails. We recognize, however, that arguably Ursery is distinguishable from this case as it involved in rem forfeiture proceedings whereas the state eviction proceeding against Taylor is in personam.

We also note an inconsistency in Taylor's position which undermines his double jeopardy argument. Taylor concedes that subsection 61.1n legitimately could be applied against a tenant using an apartment to deal drugs. Yet one may wonder why it would follow that a drug dealer who had been prosecuted criminally and punished could be evicted under subsection 61.1n without the eviction constituting punishment under Taylor's analysis. In other words, an eviction under subsection 61.1n either is or is not a punishment and the fact that the tenants being evicted are not equally culpable should not matter in a double jeopardy analysis.

Taylor argues that part of his punishment will be the loss of his rent subsidy. It is not clear, however, whether the loss will result from the eviction or from his inability to obtain a subsidy for a different premises. If his loss of the subsidy stems from an action of the federal government, i.e., the Department of Housing and Urban Development, by reason of the dual sovereignty rule the loss may not be germane here to our double jeopardy analysis. See United States v. Pungitore, 910

F.2d 1084, 1105–07 (3d Cir. 1990), cert. denied, 500 U.S. 915, 111 S.Ct. 2009 (1991). However, we do not rest our opinion on this point and for purposes of this appeal we treat his loss of subsidy as part of his claim that the eviction proceedings in the state court are punishing him.

In closing our discussion of the Double Jeopardy Clause, we think it useful to state an overview of the case which we think demonstrates how inappropriate it would be to uphold Taylor's double jeopardy argument. First, the eviction proceeding is completely independent of the criminal justice system, as the Housing Authority, not a prosecutor, is bringing the state proceedings. Second, the Housing Authority is pursuing a traditional civil remedy which both public and private landlords seek. Indeed, Taylor concedes that he could not have brought this action if his landlord had been a private party as the Double Jeopardy and Excessive Fines Clauses would not apply to such an entity. Br. at 19. Third, proceedings under subsection 61.1n, unlike the registration procedure in Artway, are not mandatory as the subsection does not require that a landlord seek to evict a tenant who is convicted of a drug violation. Fourth, the landlord could require in its lease that the tenant not violate the drug laws on its premises and if the tenant violated the agreement the landlord could seek his eviction. N.J. Stat. Ann. § 2A:18–61.1d and e.

Finally, one reasonably might ask why should a tenant benefit from conviction by using it as a shield against a landlord's attempt to protect its property and the other tenants? It would be strange, indeed, if the landlord could not seek to evict a tenant for drug activities because a prosecutor had brought criminal proceedings against the tenant for the activities. Rather, one would suppose that the landlord could use the conviction as evidence to demonstrate that the tenant had violated the lease. Indeed, as we pointed out above, a landlord who does not seek such eviction might run the risk of forfeiting his property to the state or federal government.

Finally, we reject Taylor's excessive fine argument. As the Supreme Court explained in Austin, a forfeiture can violate the Excessive Fines Clause only if the forfeiture was a punishment. 509 U.S. at 610, 113 S.Ct. at 2806. The test for whether a civil in rem forfeiture constitutes punishment under the Excessive Fines Clause of the Eighth Amendment is slightly different from the one employed in our double jeopardy clause analysis; thus, even though the state proceeding against Taylor is in personam, Taylor has less of a burden in meeting the Excessive Fines Clause standard.

In Austin, the Supreme Court held that a forfeiture would constitute punishment if it did not solely serve a remedial purpose, i.e., that it only can be explained as also serving in part to punish. Id. at 610, 113 S.Ct. at 2806. With this in mind, the Court undertook a two-part inquiry: "Whether, at the time the Eighth Amendment was ratified, forfeiture was understood at least in part as punishment and whether forfeiture . . . should be so understood today." Id. at 610–11, 113 S.Ct. at 2806. The Supreme Court held that for purposes of the Excessive

Fines Clause, a "forfeiture generally and statutory in remforfeiture in particular historically have been understood, at least in part, as punishment."  Id. at 618, 113 S.Ct. at 2810. The second prong of the Artway test incorporates the excessive fines clause inquiry under Austin.

Despite his lesser burden, Taylor has not proved that the forfeiture here constitutes punishment under the Excessive Fines Clause.  As we explained in our double jeopardy analysis under Artway, we find that the provisions of the Anti-Eviction Act and the legislative intent contradict any understanding of Taylor's forfeiture of his tenancy as punishment.  Accordingly, we cannot say that the forfeiture here served in part to punish. See also Various Computers, 82 F.3d at 508.

## III.  CONCLUSION

For the foregoing reasons we will affirm the judgment of the district court entered on November 29, 1995.