

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-1996

# United States v. Various Computers

Precedential or Non-Precedential:

Docket 95-3195,95-3378,95-3379

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Various Computers" (1996). *1996 Decisions.* Paper 205.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/205

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————————

NO. 95–3195/3378/3379

———————————————

UNITED STATES OF AMERICA,
                              Appellee,

v.

VARIOUS COMPUTERS AND COMPUTER EQUIPMENT,
PARIS FRANCIS LUNDIS,
                              Appellant.

———————————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. No. 94–2090
District Judge:  Honorable William L. Standish

———————————————

Argued March 28, 1996

Before:  Greenberg, Roth, and Rosenn, <u>Circuit Judges.</u>
(Filed April 30, l996)

———————————————

Frederick W. Thieman, U.S. Attorney
Mary McKeen Houghton, Assistant U.S. Attorney (argued)
633 U.S. Post Office and Courthouse
Pittsburgh, PA  15219
Counsel for Appellee


Shelley Stark, Acting Federal Public Defender
W. Penn Hackney, First Asst. Federal Public Defender
Karen Sirianni Gerlach, Asst. Federal Public Defender (argued)
415 Convention Tower
960 Penn Avenue
Pittsburgh, PA  15222
Counsel for Appellant

Rosenn, <u>Circuit Judge.</u>

The primary, and in this circuit, novel, issue in this appeal is whether civil forfeiture, pursuant to 18 U.S.C. §981(a)(1)(C), constitutes punishment for double jeopardy purposes, when a court has already sentenced a defendant to imprisonment and the payment of restitution. Paris Francis Lundis pled guilty in the United States District Court for the Western District of Pennsylvania to one count of unauthorized use and possession of credit cards in violation of 18 U.S.C. §1029(a)(2) & (a)(3). In addition to a ten month prison sentence and three years of supervised release, the court ordered Lundis to pay $13,674.50 restitution, the value of several pieces of computer equipment fraudulently obtained by Lundis. Further, the court deemed the equipment to be proceeds of Lundis's crime, and thus forfeitable to the United States pursuant to 18 U.S.C. § 981 (a)(1)(C). The court issued a final order of forfeiture on March 28, 1995.

We conclude that we have jurisdiction and affirm.

### I.

On September 21, 1994, Lundis pled guilty to Count I of a four count indictment charging him with unauthorized use and

possession of credit cards in violation of 18 U.S.C. §§1029(a)(2) and (a)(3). Lundis admitted that he stole the cards and used them to illegally purchase computers and computer equipment. The trial court sentenced him to ten months imprisonment, and ordered that he pay $13,674.50 in restitution to the store where he obtained the computers.

At the sentencing hearing, Lundis requested that the court allow him to keep the property in light of the court's requirement that he pay restitution.[0] The Government argued that the computers were proceeds of Lundis's crime, and thus were subject to civil forfeiture pursuant to 18 U.S.C. §981(a)(1)(C).[0] The court denied Lundis's request for possession of the property, stating that the computers were forfeitable "as a matter of law."

On December 9, 1994, the Government instituted civil forfeiture proceedings in rem against the computers by filing a verified complaint for forfeiture. The Government contends that it personally served a warrant of arrest and complaint for forfeiture against the computers upon Lundis at the Allegheny County Jail on February 1, 1995. Lundis timely filed a claim to

---

[0] Lundis contends that the computers contain personal material such as music scores. The Government asserts that the computers contain information on various stolen credit cards, as well as instructions on how to "clone" a cellular phone.
[0] Section 981 provides, in pertinent part, for the civil forfeiture to the United States of:

> (a)(1)(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Section ... 1029 ... of this title ....

18 U.S.C. § 981.

3

the computers and an answer to the Government's complaint, along with a motion to proceed in forma pauperis and for appointment of counsel.

The Government opposed Lundis's request to proceed in forma pauperis and his request for counsel. It also filed a motion to dismiss Lundis's claim. In the motion to dismiss, the Government asserted that Lundis's claim to the computers was defective because it was not verified as required by Supplemental Rule C(6) for Certain Admiralty and Maritime Claims ("Rule C(6)"). Lundis timely filed a response in opposition to the Government's motion to dismiss, admitting that his claim was neither verified nor properly served, but asserting that the procedural defects were due to his pro se and prison status. The district court dismissed Lundis's claim and entered a Judgment and Final Order of Forfeiture on March 28, 1995, in favor of the United States.

Throughout these proceedings, Lundis filed many documents pro se with the district court, including three "Notices of Appeal."[0] Lundis filed motions for leave to appeal in forma pauperis and for appointment of counsel with this court, and this court granted the motions.[0]

II.

---

[0] His first notice attempted to appeal from the district court's March 20, 1995 order: (1) denying Lundis's motion for appointment of counsel; (2) denying Lundis's motion to proceed in forma pauperis; and (3) dismissing Lundis's claim to the computers.

[0] This court first dismissed Lundis's appeal for failure to timely prosecute, then vacated the dismissal and reinstated the appeal.

4

The Government raises jurisdictional issues contending that Lundis has not appealed from the final order of forfeiture. We have plenary review over questions of jurisdiction. See Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1002 (3rd Cir. 1992).

The district court's dismissal of Lundis's claim to the property had the effect of denying him standing, and thus barred him from appealing the final forfeiture order. Without a colorable claim to the computers, Lundis lacked standing to challenge the forfeiture proceedings. Thus, as a threshold question, we must address whether the court properly denied Lundis's pro se motion to intervene in the forfeiture proceedings.

A.

Rule C(6) requires a claimant to property in a civil forfeiture to file a verified claim with the district court. The rule provides, in relevant part:

> (6) Claim and Answer; Interrogatories. The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court . . . . The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend this action.

Supplemental Rule C(6) for Certain Admiralty and Maritime Claims (emphasis added).

After the Government initiated forfeiture proceedings, Lundis duly filed a "Claim and Cost Bond and Affidavit in forma pauperis" in which he asserted that the computer equipment the Government confiscated rightfully belonged to him. This claim conformed to the rules in every respect except it lacked a verification.

The purpose of Rule C(6) is to require claimants to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested parties and resolve the dispute without delay. See United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1436 (9th Cir. 1985). The Rule requires claims to be verified upon oath or solemn affirmation to minimize the danger of false claims. Id. We understand the importance of these goals. On the facts of this case, however, a verification by Lundis, as we note below, would have been superfluous.

The fundament of Lundis's claim to ownership of the computers is his obligation to make restitution to the owners of the computer equipment. This order of restitution came from the district court. Both the court and the Government were aware of the source of Lundis's interest in the property and the basis for his claim of ownership. Thus, the verification would not have added to the authenticity of Lundis's petition. We therefore believe that it was error under these circumstances to reject Lundis's claim merely because of the absence of verification, especially in light of Lundis's pro se status and his lack of any knowledge of Rule C(6).

With his colorable claim to ownership of the computers, we believe that Lundis had standing at least to challenge the forfeiture proceedings.  See United States v. Property at 4492 S. Livonia Rd., Livonia, 889 F.2d 1258, 1262 (2nd Cir. 1989); see also United States v. $38,000 in United States Currency, 816 F.2d 1538, 1544 (11th Cir. 1987) ("A claimant need not own the property in order to have standing to contest its forfeiture; a lessor property interest, such as a possessory interest, is sufficient for standing.").  We do not believe that we may equitably deny Lundis standing where his actions have not thwarted the goals of Rule C(6).  See United States v. One Urban Lot Located at 1 Street A–1, 885 F.2d 994, 1001 (1st Cir. 1989); Property at 4492 S. Livonia, 889 F.2d at 1262; 1982 Yukon Delta Houseboat, 774 F.2d at 1436.

To dismiss Lundis's claim for failure to include a verified statement would "contradict[] both old-fashioned common sense and the time-honored admiralty principle that pleadings and procedural practices in maritime actions should be applied liberally."  One Urban Lot, 885 F.2d at 1001.  Under the extraordinary circumstances we have here, an inability to timely appeal from the forfeiture of the disputed property because of the erroneous denial of standing, we will allow the defendant to appeal.

## III.

Whether the forfeiture of the computers violated the Double Jeopardy Clause is an interesting question of law subject to

7

plenary review.  See United States v. Baird, 63 F.3d 1213, 1215

(3rd Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 909

(1996).

Although the Double Jeopardy Clause provides that no person

"subject for the same offence to be twice put in jeopardy of life

or limb," U.S. Const. amdt. 5, the Supreme Court has explained

that the Clause "protects against three distinct abuses:  a

second prosecution for the same offense after acquittal; a second

prosecution for the same offense after conviction; and multiple

punishments for the same offense." See United States v. Halper,

490 U.S. 435, 440 (1989).  Lundis contends that the district

court violated the prohibition against multiple punishments by

first ordering him to pay restitution for the value of the

computers, and later, in a subsequent forfeiture proceeding,

allowing forfeiture of the computers to the United States.

The relevant inquiry for this court is whether the

forfeiture procedures under 18 U.S.C. § 981 constitute punishment

for double jeopardy purposes. See Halper, 490 U.S. at 441.

Recent Supreme Court cases note that civil sanctions may

constitute punishment in certain circumstances. See Austin v.

United States, ___U.S.___, 113 S.Ct. 2801, 2812 (1993) (civil

forfeiture pursuant to 21 U.S.C. § 881(a)(4) and (a)(7)

constitute punishment); Halper, 490 U.S. at 447 ("the labels

'criminal' and 'civil' are not of paramount importance" in

assessing the punitive character of a statute).

In Halper, the trial court sentenced the defendant, Irwin

Halper, to two years imprisonment and fined him $5,000 for

8

violating the criminal false claims statute, 18 U.S.C. § 287. The Government later proceeded against Halper under the civil False Claims Act, 31 U.S.C. §§ 3729-3731. The provisions of the civil Act provided for a penalty of $2,000 for each violation of the Act. Halper had violated the Act 65 times, and thus the Government contended he was subject to a penalty of more than $130,000. Halper, 490 U.S. at 438-39.

The district court in Halper refused to impose the full $130,000 penalty, finding that the full penalty would violate the Double Jeopardy Clause in light of Halper's previous criminal punishment. The district court determined that the penalty would constitute punishment unless it served a remedial purpose. Sanctions serving a remedial purpose make the Government whole for such costs as detection, investigation and prosecution of a criminal. See id. at 445, 449. The court in Halper found that the amount of the penalty was "entirely unrelated" and bore no "rational relation" to the actual damages incurred by the Government. Thus, it held that the $130,000 penalty would "punish" Halper a second time in violation of the Double Jeopardy Clause. The Supreme Court agreed. It noted that punishment serves the "twin aims of retribution and deterrence," and explained:

> [I]t follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. . . . We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be

9

characterized as remedial, but only as a deterrent or retribution.

Id. at 448-49.[0]

In Austin, 113 S.Ct. 2901, the Court applied the Halper analysis to the forfeiture provisions of 21 U.S.C. §§ 881(a)(4) and (a)(7), and found that those provisions constituted punishment for purposes of the Eighth Amendment's Excessive Fines Clause.[0] The Court noted that, historically, forfeiture was understood to be a punishment. Further, the Court found that the statute's emphasis on the culpability of the party indicated a congressional intent to punish. The Court concluded that forfeiture provisions deemed to be partially or entirely punitive in nature constitute punishment. Id. at 2811-12.

It is important to note that Austin involved forfeiture proceedings pursuant to 21 U.S.C. § 881(a)(4) and (a)(7). These

---

[0]The court remanded the case to the trial court to determine "the size of the civil sanction the Government may receive without crossing the line between remedy and punishment." Id. at 450.

[0]21 U.S.C. § 881(a)(4) and (a)(7) provide, in relevant part:

> (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment or [controlled substances].
>
> .          .          .
>
> (7) All real property . . . which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter . . . .

10

statutes involve property that facilitates illegal activity, and thus run the danger of commanding forfeiture of items that bear a disproportionate relationship to the government's costs.[0] See Austin, 113 S. Ct. at 2812 n.14 ("The value of the conveyances and real property forfeitable under §§ 881 (a)(4) and (a)(7) . . . can vary so dramatically that any relation between the Government's actual costs and the amount of the sanction is merely coincidental."). We believe these statutes may be distinguished from the statute implicated in the instant case, 18 U.S.C. § 981(a)(1)(C). In Section 981(a)(1)(C), the forfeitable property is limited to proceeds of the crime. At least two courts of appeals have distinguished the Supreme Court's decision in Austin as inapplicable to cases where the only property the government seizes are direct proceeds of an illegal act. See United States v. Salinas, 65 F.3d 551, 553 (6th Cir. 1995); United States v. Tilley, 18 F.3d 295, 300 (5th Cir. 1994), reh'g denied, 22 F.3d 1096 (5th Cir. 1994), cert. denied ___ U.S. ___, 115 S. Ct. 574 (1994).

Tilley involved, inter alia, a challenge to the forfeiture provisions of 21 U.S.C. §§ 881(a)(6) and (a)(7).[0] The defendants sought dismissal of their criminal indictment for selling drugs,

---

[0] For example, the Government invokes these statutes to confiscate automobiles or real estate that a party may have used as a base to make a drug sale.

[0] Section 881(a)(6) provides for the forfeiture of all moneys, securities, etc. furnished in exchange for a controlled substance, or used to facilitate a violation of the drug laws. Section 881(a)(7), as discussed in footnote 8, provides for the forfeiture of real property. The court in Tilley deemed all the property forfeited to be proceeds of the defendants' crime. See Tilley, 18 F.3d at 297 n. 2.

11

arguing that the prior civil forfeiture of the proceeds of the drug sales constituted punishment for double jeopardy purposes. The Fifth Circuit court of appeals found that the forfeited property constituted unlawful proceeds to be a crucial factor in its analysis. Id. at 298. It noted that, unlike the fines imposed in Halper, the forfeiture of proceeds bore a rational relationship to the costs to the government and society of the illegal act. Id. at 299. The Tilley court found the Supreme Court's decision in Austin inapplicable. It noted that Austin dealt with forfeitures under Sections 881(a)(4) (conveyances) and (a)(7) (real estate), and that, unlike proceeds of a crime, these provisions may have no proportional relationship to the costs to the government. The court explained:

> [A] forfeiture proceeding may constitute punishment because it involves the extraction of lawfully derived property from the forfeiting party. . . . When, however, the property taken by the government was not derived from lawful activities, the forfeiting party loses nothing to which the law ever entitled him. . . . [T]he forfeiture . . . does not punish the defendant because it exacts no price in liberty or lawfully derived property from him. The possessor of proceeds from illegal drug sales never invested honest labor or other lawfully derived property to obtain the subsequently forfeited proceeds. Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity.
>
> .     .     .
>
> Consequently, instead of punishing the forfeiting party, the forfeiture of illegal proceeds, much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme. This is not punishment "within the plain meaning of the word."

12

Id. at 300 (citations omitted).

We have already adopted Tilley's rationale as the controlling law of this circuit for civil forfeiture of proceeds under 21 U.S.C. § 881(a)(6).  See United States v. $184,505.01 in United States Currency, 72 F.3d 1160, 1168-69 (3rd Cir. 1995) ("We find the Fifth Circuit's reasoning [in Tilley] to be sound. We therefore hold that the forfeiture under 21 U.S.C. § 881(a)(6) of proceeds from illegal drug transactions, or proceeds traceable to such transactions, does not constitute "punishment" within the meaning of the Double Jeopardy Clause.").  Following $184,505.01, we find Tilley equally persuasive for civil forfeitures under 18 U.S.C. § 981(a)(1)(C).

We see no reason why our holding in $184,505.01 is not controlling.[0]  First, the statute at issue in this case and the statute at issue in $184,505.01 are parallel.  Although the two forfeiture provisions use different language, we read them to mean the same thing.  Both provide for forfeiture of proceeds. Compare 18 U.S.C. § 981(a)(1)(C) (providing for forfeiture of any

---

[0] At oral argument, counsel for appellant attempted to distinguish $184,505.01 by saying it dealt only with administrative forfeiture.  This is plainly incorrect.  Although the Government initially brought an administrative forfeiture proceeding against $14,000 and certain other property, it later converted that proceeding to a judicial forfeiture action.  See 72 F.3d at 1162-63 ("The DEA began separate administrative forfeiture proceedings . . . [then] referred the forfeitures to the United States Attorney, who filed complaints for civil forfeiture").  The forfeiture action against the $184,505.01 that formed the basis for our double jeopardy rulings was at all times a judicial forfeiture.  See id. at 1162 n.5 ("The DEA referred the forfeiture of the $184K to the United States Attorney for judicial forfeiture, because its value exceeded $100,000, the maximum allowable amount for the . . . administrative forfeiture process.").

13

property "which constitutes or is derived from proceeds traceable to a violation of Section . . . 1029 . . . of this title . . . . ") with 21 U.S.C. § 881(a)(6) (providing for forfeiture of all moneys "furnished in exchange for a controlled substance"). Because our decision in $184,505.01 dealt specifically with forfeiture of proceeds under § 881(a)(6), the additional language in that provision dealing with forfeiture of money "used to facilitate a violation of the drug laws" is of no moment. That this case involves a different statute is not enough to distinguish $184,505.01.

Second, when viewed in terms of the reasoning in Tilley, the relationship between the forfeited property and the underlying offense in this case is identical to that found in $184,505.01. Just like the proceeds of drug trafficking, the proceeds of credit card fraud vary directly with the severity of the crime: The more items purchased with stolen credit cards, the more property that will ultimately be forfeited to the government. See $184,505.01, 72 F.3d at 1168 ("[T]he forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. The more drugs sold, the more proceeds that will be forfeited." (quoting Tilley, 18 F.3d at 300)). The involvement in this case of a different underlying offense is therefore unimportant.

Finally, our reasoning in $184,505.01 applies even if Lundis has already paid an amount of restitution equal to the value of the stolen computers. We noted in $184,505.01 that two rationales were at work in Tilley, first that the forfeited

14

amounts were directly proportional to the severity of the crime, and second that forfeiture was not punishment because of the very nature of illegally derived property. Id. at 1168. Post-restitution forfeiture comports with both. Under the first, paying restitution plus forfeiture at worst forces the offender to disgorge a total amount equal to twice the value of the proceeds of the crime. Given the many tangible and intangible costs of criminal activity, this is in no way disproportionate to "the harm inflicted upon government and society by the [offense]." Tilley, 18 F.3d at 300. Under the second rationale, payment of restitution in no way alters the status of the property as ill-gotten gains. Restitution operates to make the victim of the crime whole, not to confer legal ownership on the offender of the stolen property. As a result, Lundis's payment of restitution prior to forfeiture makes no difference in our double jeopardy analysis.

Following $184,505.01, we hold that forfeiture of proceeds under § 981(a)(1)(C) is not punishment. In reaching this outcome, we remain aware of contrary authority. Lundis urges us to follow the Court of Appeals for the Ninth Circuit's ruling in United States v. $405,089.23 United States Currency, 33 F.3d 1210 (9th Cir. 1994), reh'g denied and modified on other grounds, 56 F.3d 41 (9th Cir. 1995), cert. granted, ___ U.S. ___, 116 S.Ct. 762 (1996), which held that civil forfeiture under 18 U.S.C. §981(a)(1)(A) and 21 U.S.C. § 881(a)(6) constitute punishment barred by the Double Jeopardy Clause. See also United States v. 9844 S. Titan Court, 75 F.3d 1470 (10th Cir. 1996) (rejecting

15

reasoning of <u>Tilley</u> and <u>$184,505.01</u>, following <u>$405,089.23</u>).  In <u>$184,505.01</u>, "we reject[ed] the contrary reasoning and conclusions of the Ninth Circuit regarding § 881(a)(6)."  72 F.3d at 1169.  With nothing to distinguish this case from <u>$184,505.01</u>, we again reject the Ninth Circuit's reasoning in regards to §981(a)(1)(C).[0]

Given this interpretation of 18 U.S.C. § 981(a)(1)(C), it follows that Lundis's forfeiture of his computer equipment did not constitute punishment for purposes of the Double Jeopardy Clause.  The district court committed no error in rejecting Lundis's double jeopardy claim.

B.

Lundis also asserts that the forfeiture of the computers violates the Excessive Fines Clause of the Eighth Amendment. Constitutional interpretations are questions of law subject to plenary review.  <u>See</u> <u>Epstein Family Partnership</u>, 13 F.3d 762, 766 (3rd Cir. 1994).

The Eighth Amendment prohibits excessive bail, excessive fines, and cruel and unusual punishment.  Lundis may only succeed in challenging the forfeiture as a violation of the Excessive Fines Clause if the forfeiture provision constitutes a

---

[0]Indeed, our rejection of <u>$405,089.23</u> seems even more warranted here:  As discussed above, § 981(a)(1)(C) is a pure proceeds statute.  By contrast, § 981(a)(1)(A) covers property "involved in" an offense, and § 881(a)(6) covers both proceeds and money "used to facilitate" an offense.  To the extent that our holding rests on the unique status of proceeds, its logic applies most strongly to § 981(a)(1)(C).

16

"punishment."  See Austin, 113 S. Ct. at 2804.  The computers forfeited pursuant to 18 U.S.C. § 981(a)(1)(C) were proceeds of Lundis's criminal activity.  As discussed above, the forfeiture provision in the instant case does not constitute "punishment." Thus, Lundis's Excessive Fines claim has no merit.

                              IV.

     In sum, we hold that the district court improperly dismissed Lundis's claim to the property subject to forfeiture. Although his claim did not contain a verification of ownership, under the facts of this case, Lundis presented a colorable claim to the property to grant this court jurisdiction.

     On the merits, we hold that the forfeiture of the computers, which were proceeds of Lundis's crime, and to which he had no legal rights of ownership, did not constitute punishment. Thus, the forfeiture did not violate the Double Jeopardy or Excessive Fines Clauses.

     Accordingly, the order of forfeiture of the district court will be affirmed.

                              17