OPINION
{¶ 1} On the evening of August 20, 2002, appellant, John Dinapoli and a friend, Thomas O'Kelley, decided to go out drinking. The two met at a BP gas station where O'Kelley left his car and drove with appellant to Slam Jam's, a bar in Mentor, Ohio.
 {¶ 2} After arriving at the bar, appellant and O'Kelley found several people with whom O'Kelley was associated including Jessica Cupp, Paul Reed, Justin Matheny, Greg Kovacs, and Chris Loucks. (collectively "the Painesville group"). These individuals were roughly the same age and many had attended the same high school. The Painesville group drank and socialized on one side of the bar.
 {¶ 3} On the other side of the bar, a separate group convened which included Richard Nelson, "Big John" Duer, and the victim, Ken Zimmerman. The three men were regular patrons at Slam Jams and knew the acting manager, Scott Wilson. Each of these gentlemen was rather large,[1]
possessed a shaved head, and wore tattoos. No one in this group knew any of the members of the Painesville group.
 {¶ 4} At some point in the evening, Big John donned a small shirt belonging to a petite female bartender and Big John comedically paraded around the bar wearing the tiny shirt. Unamused, certain individuals from the Painesville group began calling Big John a "fat ass" and instructed him to "put his gut away" and "put his tits away."
 {¶ 5} The name calling was not well received; Zimmerman, Nelson, and Big John confronted the Painesville group and a shoving match ensued. The most aggressive participants in the fracas were Kovacs and Zimmerman. Appellant was neither involved in the name calling nor the shoving.
 {¶ 6} In an effort to stop a possible fight, Scott Wilson intervened and demanded that the parties leave. Wilson witnessed the general development of the problem and believed the Painesville group was responsible. As he knew the three larger men, Wilson suggested Zimmerman, Nelson, and Big John meet him behind the bar after the others left and he would readmit them through the kitchen.
 {¶ 7} Zimmerman, Nelson, and Big John left the bar per Wilson's directive. Nelson and Big John then circled behind the building and re-entered through the kitchen. Zimmerman, however, walked to his truck to retrieve his wallet. As Zimmerman was returning he met appellant and his associates in the parking lot area. The men exchanged acrimonious words and the altercation became physical when Zimmerman challenged the entire group to a fight. Kovacs accepted the invitation by "sucker punching" Zimmerman in the side of the head. Zimmerman buckled to his knee whereupon various members of the Painesville group began kicking and punching him. According to witnesses, Loucks and Kovacs administered most of the punishment. Again, appellant did not speak to Zimmerman at this time and was not involved in the fight.
 {¶ 8} Once they realized Zimmerman did not follow them to the kitchen, Big John and Nelson walked to the parking lot; however, by this time, the melee had diffused. Although Zimmerman sustained cuts and bruises from the beating, he continued to taunt the Painesville group. In particular, Zimmerman queried aloud: "Is that all you guys got?" He then added: "I'm still standing, you know I am motherfuckers." In response to Zimmerman's posturing, appellant, who was near his car, called Zimmerman a "fat fucker puss" and instructed him to "just go home." Upon hearing this, Zimmerman ran after appellant and O'Kelley. The two jumped in appellant's car and appellant put the vehicle in reverse. Zimmerman caught up to the car and delivered either a kick, punch, or both to the side of appellant's vehicle.
 {¶ 9} Enraged that Zimmerman struck his vehicle, appellant announced: "That motherfucker kicked my car, I'm going to fuck him up;" other eyewitnesses who heard appellant's threat testified that appellant actually stated he was going to "run that fat fucker over." According to O'Kelley, appellant revved his engine and "floored it." Appellant drove at a high speed through the parking lot directly at Zimmerman.
 {¶ 10} Zimmerman stood on a raised concrete "island" located in the parking lot where he bent down and picked up a rock. According to expert testimony, appellant's vehicle had reached a minimum speed of 41 mph as he approached Zimmerman. Appellant ran over the concrete island striking Zimmerman. Zimmerman smashed face first into the windshield of appellant's vehicle causing it to "spider web." Zimmerman rolled onto the top of the hood and was thrown off the vehicle onto the parking lot. Appellant quickly fled the parking lot. Although no eye witnesses heard the sound of brakes, the state's accident reconstructionist testified appellant applied his brakes some 62 feet before striking Zimmerman. From this, the accident reconstructionist testified that appellant's vehicle was moving at approximately 13 mph when it struck Zimmerman.
 {¶ 11} The force of the hit knocked Zimmerman unconscious. Eyewitnesses stated Zimmerman was bleeding badly from his mouth, nose, and eyes and was gasping for air. Emergency crews arrived and transported Zimmerman to a local hospital in Lake County. Eventually, Zimmerman was transported by helicopter to a major trauma center located in Akron, Ohio.
 {¶ 12} Meanwhile, stunned by his actions, appellant speedily drove away from the bar. O'Kelley, appellant's passenger, urged appellant to either go back to the scene or let him out of the vehicle. Eventually, appellant dropped O'Kelley off at the gas station where his car was parked; appellant then continued on his way. Later that night, appellant was driving in Concord Township when he swerved to purportedly avoid a deer. His car went off the road and rolled down an embankment.
 {¶ 13} The Lake County Sheriff's Department initially responded to the scene of the accident. Because the Honda Civic resting in the ravine matched the description of the car involved in the incident at Slam Jam's, the Sheriff's Department contacted the Mentor Police Department. Appellant was transported to the Mentor police station where he filled out an accident report. Appellant was not in custody at this point; however, appellant's description of the accident did not make sense to the officers taking his report. The officers inquired whether appellant was at Slam Jam's the previous evening. After admitting he was at Slam Jam's, the officers read appellant his Miranda warnings. Appellant then voluntarily agreed to speak with the investigating officers.
 {¶ 14} Appellant described the initial verbal altercation that occurred in Slam Jam's. Appellant then recalled the fight that took place in the parking lot where Zimmerman was beaten. Before entering his vehicle appellant admitted that he may have said something to Zimmerman in the parking lot such as "just go home." Appellant noted that Zimmerman charged him and punched his car several times. Appellant told officers he wanted to "scare" Zimmerman before leaving Slam Jam's. To this end, appellant "revved" his engine and began to drive in Zimmerman's general direction. In doing so, however, appellant stated he accidentally hit Zimmerman. Appellant admitted to fleeing the parking lot after the incident; eventually, he claimed, in an attempt to avoid a deer, he swerved off the road.
 {¶ 15} Although Zimmerman survived the incident, he remained comatose for nearly a month. He sustained multiple leg fractures, as well as severe ligament and nerve damage. Additionally, Zimmerman suffered seizures, sustained memory loss, experienced significant swelling of the joints, and will be forced to wear a knee brace for the rest of his life.
 {¶ 16} On January 15, 2003, appellant was indicted on one count of attempted murder, a felony of the first degree, in violation of R.C.2923.02 and two counts of felonious assault, felonies of the second degree, in violation of R.C. 2903.11(A)(1) and (2). The matter proceeded to a jury trial on August 12, 2003. Prior to closing arguments, the prosecution made an oral motion to dismiss the attempted murder charge. The remaining felonious assault charges were renumbered as new counts one and two. On August 15, 2003, the jury convicted appellant on both counts of felonious assault. Appellant was ultimately sentenced to a prison term of seven years with respect to each felonious assault conviction with the sentences to run concurrently. The trial court also ordered appellant to pay $269,016.59 in restitution to the victim in light of his documented medical expenses.
 {¶ 17} Appellant now appeals assigning the following three errors for our consideration:
 {¶ 18} "[1.] The judgment is contrary to law because it is based on insufficient evidence.
 {¶ 19} "[2.] The $269,016.59 judgment for restitution violates the due process clause and the excessive fines clause of both the state and federal constitutions.
 {¶ 20} "[3.] John Dinapoli's prison sentence of seven (7) years violated the Jury Trial Clause of the Sixth Amendment of the U.S. Constitution and the corresponding provision of the Ohio Constitution."
 {¶ 21} Under his first assignment of error, appellant argues that his conviction was premised upon insufficient evidence. Appellant contends that because evidence was introduced that he braked some 62 feet before striking the victim, he abandoned his previous criminal purpose thereby removing the necessary mens rea to support the felonious assault conviction.
 {¶ 22} We must initially note that appellant failed to renew his motion for acquittal at the close of all evidence. We have previously held that an appellant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the appellant fails to renew the motion at the close of all the evidence. See, Village of North Kingsvillev. Anthony (Dec. 5, 1997), 11th Dist. No. 97-A-0018, 1997 WL 772924, at fn. 3. In the case sub judice, appellant moved for acquittal after the state rested, and the trial court denied the motion; however, appellant failed to renew the motion after putting on his defense. Accordingly, appellant has waived any challenge to the sufficiency of the evidence regarding his felonious assault convictions.
 {¶ 23} However, even if appellant properly preserved his sufficiency argument, his position is flawed for several reasons. Initially, appellant relies upon R.C. 2923.02, the statutory section governing crimes of "attempt," to support his abandonment defense.
 {¶ 24} R.C. 2923.02(D) provides:
 {¶ 25} "It is an affirmative defense to a charge under this section
that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose." (Emphasis added).
 {¶ 26} As indicated above, the state dismissed the attempted murder charge before the case was sent to the jury. The only remaining counts were the two felonious assault charges. Therefore, by its own language, R.C. 2923.02(D), which requires a charge of "attempt" under R.C. 2923.02
is inapplicable.
 {¶ 27} However, even if R.C. 2923.02(D) applied, appellant failed to raise, in either form or substance, the affirmative defense during his trial. The law is clear that a defendant has the burden of going forward with evidence of an affirmative defense. R.C. 2901.05(A). Where the defendant fails to raise an affirmative defense, it is axiomatic that he has failed to meet this burden. Because appellant did not raise the affirmative defense at the lower court, he has waived it and cannot raise it now for the first time on appeal.[2] Crim.R. 12(H); see, also, Statev. Price, 3d Dist. No. 8-99-18, 2000 Ohio 1731, at 6.
 {¶ 28}
Notwithstanding the difficulties inherent in appellant's R.C. 2923.02(D) argument, we believe the state put forth sufficient evidence to support the conviction. A challenge based upon evidential sufficiency is a test of adequacy. That is, a reviewing court observes the evidence submitted by the state and determines, in light of the charges on which the trial is premised, whether the state has presented enough evidence to support a conviction beyond a reasonable doubt. State v. Newton (June 27, 1997), 11th Dist. No. 96-L-058, 1997 Ohio App. LEXIS 2802, at 12. This analysis requires a reviewing court to view the evidence in a light most favorable to the prosecution. Id.
 {¶ 29} Under the circumstances, appellant was indicted on two counts under both subsections of R.C. 2903.11(A); to wit, felonious assault. The statutory elements of these charges require the state to prove that appellant knowingly (1) caused serious physical harm to another or another's unborn; and (2) cause or attempt to cause physical harm to another or to another's unborn by use of a deadly weapon or dangerous ordnance.
 {¶ 30} One acts knowingly, regardless of one's purpose, when one is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B).
 {¶ 31} At trial, the state demonstrated, via witness testimony, that appellant possessed the requisite mens rea to support the charges. Various witnesses testified that appellant, after the victim struck his vehicle with either a kick or a punch, exclaimed "That motherfucker kicked my car, I'm going to fuck him up" and/or "I'm going to run that fat fucker over." According to Thomas O'Kelley, an eyewitness and passenger in appellant's vehicle, appellant followed this declaration by "flooring it" in the victim's direction. In our view, such actions, considered in conjunction with the injury sustained by the victim, indicate that appellant knowingly engaged in the charged criminal activity.
 {¶ 32} That said, we hold the state put forth sufficient evidence going to each element of the two felonious assault charges: With respect to R.C. 2903.11(A)(1), the state introduced evidence that appellant knowingly acted to cause serious physical harm to the victim. It was uncontroverted that appellant was the driver of the vehicle which caused Mr. Zimmerman's harm and he did so with the awareness that his actions would probably cause this result.
 {¶ 33} With respect to count two, R.C. 2903.11(A)(2) requires the same proof with the addition of the element of a "deadly weapon" or "dangerous ordnance." The state submitted evidence that appellant's car was moving at a minimum speed of 41 mph and, although he braked for 62 feet, he struck Mr. Zimmerman while the vehicle was still traveling 13 mph. From this evidence, the jury had sufficient evidence before it to infer the additional element mandated by R.C. 2903.11(A)(2). Thus, the state offered sufficient evidence to support the second felonious assault charge.
 {¶ 34} However, in light of this discussion, it is clear that appellant's first assignment of error challenges the weight of the evidence as it asks this court to weigh the probative force of the abandonment defense against the evidence presented by the state.
 {¶ 35} When reviewing the evidential weight, an appellate court, after reviewing the entire record, weighs the evidence and all reasonable inferences and determines whether the jury clearly lost its way creating a manifest miscarriage of justice. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 5. Under the circumstances, the abandonment defense does not apply and is therefore irrelevant.
 {¶ 36} At trial, however, appellant alleged that he was merely trying to scare the victim and used evidence that he braked for 62 feet to support this theory. Even assuming arguendo that appellant was trying to scare the victim and the evidence of his braking supported this theory, such evidence does not negate the requisite mens rea for the charges and convictions of felonious assault. That is, a party can be motivated by an interest in frightening a victim yet still appreciate that his actions will probably cause a particular result or probably be of a certain nature. Here, appellant announced his intent to hit the victim. He then took off in the victim's direction traveling at a rate of no less than 41 mph. Even if he did hit the brakes, a jury could reasonably find that appellant sped towards Zimmerman with the awareness that his actions would probably cause a certain result, viz., injuring Mr. Zimmerman. These observations, in conjunction with our conclusion supra regarding the evidence put forth by the state, demonstrates that the jury did not clearly lose its way so as to create a miscarriage of justice. Thus, appellant's conviction is not against the manifest weight of the evidence.
 {¶ 37} Appellant's first assignment of error is overruled.
 {¶ 38} In his second assignment of error, appellant contends that the court's $269,016.59 judgment for restitution violates the due process clause and excessive fines clause of the state and federal constitutions.
 {¶ 39} Appellant did not object at sentencing to the restitution order. Thus, as with his first assignment of error, appellant failed to properly preserve his excessive fines clause and due process challenges for appeal. However, even with proper objections, his arguments are meritless.
 {¶ 40} At the sentencing hearing, the court received documentation of the victim's medical expenses. The documented medical bills totaled $269.016.59. The court, during its sentencing exercise, ordered restitution in this amount prior to imposing its sentence. Further, in its judgment entry of sentence, the court stated:
 {¶ 41} "The Court * * * hereby orders that the Defendant is to make restitution to the victim of the Defendant's criminal act, in the amount of Two Hundred Sixty-nine Thousand Sixteen and 59/100 Dollars ($269,016.59), the victim's economic loss."
 {¶ 42} The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." "[T]he excessive fines clause limits the government's power to extract payments, whether in cash or in kind, `as punishment for some offense.'" Austin v.United States (1993), 509 U.S. 602, 609, quoting Browning — Ferris Industries ofVt. Inc. v. Kelco Disposal, Inc. (1989), 492, U.S. 257, 265. Further, the excessive fines clause of the Ohio Constitution "disallows the imposition of excessive civil fines." State v. Fitzmaurice (Dec. 3, 1999), 11th Dist. No. 98-L-199, 1999 Ohio App. LEXIS 5780, at 3. As a preliminary matter, a party claiming an "excessive fines" clause violation must demonstrate that the challenged action constitutes punishment. Taylor v.Cisneros (1995), 913 F.Supp. 314, 319.
 {¶ 43} Restitution, by its very nature, is not punishment. In theMatter of Wood (Apr. 14, 1986), 3d Dist. No. 9-84-44, 1986 Ohio App. LEXIS 6578, at 16. Rather, restitution is ordered to remunerate a victim so as to place him in the position he would have been had the violation not occurred. United States v. Various Computers and Computer Equip. (3 C.A. 1996), 82 F.3d 582, 586.
 {¶ 44} As appellant notes, the amount of restitution ordered is significant. However, appellant has failed to put forth any evidence that the restitution in question was punitive in nature. To the contrary, the amount was derived from medical bills which were documented by the victim. Further, the instant case involves a criminal matter; as such, the excessive fines clause within the Ohio Constitution does not ostensibly apply. In sum, the restitution award was a remedial attempt by the court to place the victim in the same economic position he would have been had the violation not occurred. Thus, appellant has failed to meet the threshold requirement for an "excessive fines" challenge.
 {¶ 45} Appellant's due process claim is equally unavailing. Appellant notes that "[t]he essence of due process is noticed (sic) and a hearing — as to the quarter million dollar judgment here, Mr. Dinapoli got neither." On the contrary, the court conducted a colloquy with the victim and his step father regarding the medical expenses during the sentencing hearing. At no point during the hearing did defense counsel object or seek inspection of the documents supporting the amount. Appellant had notice and an opportunity to be heard or take issue with the amount of restitution; he did not do so. Thus, the $269.016.59 of restitution was not so "plainly arbitrary and oppressive as to violate the due process clause." Taylor supra, @ 323, citing Southwestern Telegraph and Telephonev. Danaher (1915), 238 U.S. 482.
 {¶ 46} Appellant's second assignment of error lacks merit.
 {¶ 47} In his final assignment of error, appellant contends that the judicial factfinding required by R.C. 2929.14(B)(2), which empowers a court to elevate a defendant's prison sentence from the statutory minimum, violated his Sixth Amendment right to a jury trial.
 {¶ 48} In Blakely v. Washington (2004), 124 S.Ct. 2531, the defendant pleaded guilty to kidnapping involving the use of a firearm, a class B felony. In the state of Washington, the statutory maximum for a class B felony is ten years; however, other provisions of Washington's law limited the range of sentences a judge could impose. Consequently, the "standard" statutory range for the offense of which the defendant was convicted was 49 to 53 months. Although the guidelines set forth the "standard" sentence, a court had the ability to augment the "standard" sentence if it found any of a non-exhaustive list of aggravating factors justifying the departure. In Blakely, the trial court determined the defendant acted with "deliberate cruelty" and imposed a sentence of 90 months, a 37 month upward departure from the "standard."
 {¶ 49} The United States Supreme Court reversed the case holding that a trial court may not extend a defendant's sentence beyond the statutory maximum when the facts supporting that finding are neither admitted by petitioner nor found by a jury. The court emphasized that the statutory maximum is "the maximum sentence a judge may impose solely on the basisof the facts reflected in the jury verdict or admitted by thedefendant." Id. at 2537. (Emphasis sic.)
 {¶ 50} Appellant was convicted on two counts of felonious assault, a felony of the second degree. The minimum statutory prison term for a second degree felony is two years and the maximum is eight. The trial court imposed concurrent seven year sentences for both counts.
 {¶ 51} R.C. 2929.14(B) states:
 {¶ 52} "(B) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 53} "(1) The offender was serving a prison term at the time of the offense, or the offender previously served a prison term.
 {¶ 54} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 55} Here, appellant was neither serving a prison term at the time of the offense nor had he served a previous prison term. Accordingly, to support its upward departure from the statutorily required two year sentence, the trial court stated: "the shortest prison term will demean the seriousness of defendant's conduct and the shortest prison term will not adequately protect the public from future crime by the defendant or others."
 {¶ 56} In appellant's view, the statute prescribes a two year term of imprisonment so long as the offender was not serving a prison term at the time of the offense or the offender had not previously served a prison term. To overcome this presumption, court must engage in a factfinding process. The facts permitting the upward departure, however, were neither admitted by appellant nor charged in the indictment; by implication, the R.C. 2929.14(B)(2) facts were not reflected in the jury's verdict. Appellant concludes R.C. 2929.14(B) runs afoul of Blakely and therefore he was entitled to a two year sentence. We disagree.
 {¶ 57} Appellant's argument suggests that Blakely acts to completely eliminate sentencing discretion. On the contrary, Blakely indicates that a sentencing judge may exercise his or her discretion precisely to the extent that doing so does not impinge upon the "jury's traditional function of finding the facts essential to lawful imposition of the penalty." Id. at 2540. Due Process "requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." Patterson v. New York
(1977), 432 U.S. 197, 210. As a criminal defendant has never enjoyed aSixth Amendment right to jury sentencing, the penalty phase of a criminal trial does not implicate the full panopoly of rights guaranteed by due process. Thus, judicial fact-finding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable doubt components of the Fifth andSixth Amendments. Harris v. United States (2002), 536 U.S. 545, 558.
 {¶ 58} It bears noting that "legislative bodies do not have the unfettered discretion to lessen the government's burden of proof of a criminal charge simply by characterizing a factor as a penalty consideration rather than as an element of the offense." United Statesv. Rigsby (6 C.A. 1991), 943 F.2d 631, 641. However, not every fact with a bearing on sentencing must be found by a jury. Jones v. United States
(1999), 526, U.S. 227, 248. Since the inception of "sentencing ranges," judges have regularly considered uncharged factors, whether aggravating or mitigating, that, while increasing the defendant's punishment, have not transcended the limits of the specified punishment under the law.Harris, supra, at 562.
 {¶ 59} Citing Bishop, Criminal Procedure, section 85, at 54, the United States Supreme Court stated:
 {¶ 60} "Where the law permits the heaviest punishment on a scale laid down, to be inflicted, and has merely committed to the judge the authority to interpose its mercy and inflict a punishment of a lighter grade, no rights of the accused are violated though in the indictment there is no mention of mitigating circumstances. The aggravating circumstances spoken of cannot swell the penalty above what the law has provided for the acts charged against the prisoner, and they are interposed merely to check the judicial discretion in the exercise of the permitted mercy. This is an entirely different thing from punishing one for what is not alleged against him." Harris, supra, 561-562
 {¶ 61} Because the factors in question fit within this description, the general assembly's choice to entrust them to the judge does not improperly trespass on a defendant's Sixth Amendment right to a jury trial. Id.
 {¶ 62} The General Assembly has made it clear that the R.C.2929.14(B)(2) findings in question are sentencing factors. After the state proved, beyond a reasonable doubt, appellant committed felonious assault, he was subject, by law, to a sentence between two and eight years for each count. Through the guidance of certain statutorily denoted "aggravating" circumstances, the court sentenced appellant to two concurrent seven year terms. Because the R.C. 2929.14(B)(2) sentencing factors do not empower a court to "swell the penalty above what the law has provided," appellant is not entitled to have these facts charged, heard by a jury, and proved beyond a reasonable doubt.
 {¶ 63} We believe Blakely does not affect appellant's sentence as the court did not impinge upon appellant's rights to due process. Appellant's third assignment of error is therefore overruled.
 {¶ 64} For the above reasons, appellant's assignments of error are overruled and the judgment of the Lake County Court of Common Pleas is therefore affirmed.
Grendell, J., concurs, O'Neill, J., dissents with Dissenting Opinion.
[1] The record indicates that Richard Nelson was 6'3", 260lbs, Big John Duer was between 6'4" and 6'5", 350lbs, and Ken Zimmerman was 5'5", 250lbs.
[2] Appellant's principle defense at trial was premised upon his contention that he could not knowingly commit the charged offenses where he merely desired to "scare" the victim and the physical evidence demonstrated that he applied the brakes 62 feet before striking the victim. In other words, appellant argued that he did not know his actions would probably cause the victim to be struck by his vehicle. The defense set forth in R.C. 2923.02(D) necessarily requires a complete and voluntary renunciation or abandonment of an actor's criminal purpose. As appellant's trial defense does not evince a complete abandonment of his criminal purpose, the defenses are distinct. Therefore, if appellant believed the defense viable, he was required to raise his R.C. 2923.02(D) defense during his trial and put forth evidence in support.