**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 19-3679 & 19-3774

_____

UNITED STATES OF AMERICA

v.

STAMATIOS KOUSISIS,
a/k/a Tom Kousisis, Appellant in No. 19-3679

UNITED STATES OF AMERICA

v.

ALPHA PAINTING & CONSTRUCTION CO., INC.,
Appellant in No. 19-3774

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Nos. 2:18-cr-00130-001 & 2:18-cr-00130-03)
District Judge: Honorable Wendy Beetlestone

_____

Previously Argued August 18, 2021
Submitted September 22, 2023

_____

(Filed: September 27, 2023)

Before: SHWARTZ, RESTREPO, and McKEE, *Circuit Judges**

_____

* The panel has been reconstituted to include Judge Shwartz after panel rehearing was
granted and the appeals have been submitted on the complete appellate record and the
audio recording of the August 18, 2021 oral argument.

Paul G. Shapiro **[ARGUED]**
David E. Troyer
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

    *Attorneys for Appellee*

Lisa A. Mathewson **[ARGUED]**
Suite 1320
123 South Broad Street
Philadelphia, PA 19109

    *Attorney for Appellants*

Lawrence S. Lustberg
Gibbons
One Gateway Center
Newark, NJ 07102

    *Attorney for Amicus Appellants*

————————————

OPINION[*]

————————————

McKEE, *Circuit Judge.*

On August 30, 2018, a jury convicted Stamatios Kousisis and Alpha Painting & Construction Co., Inc. ("Alpha") of, among other things, one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and three counts of wire fraud, in violation of 18 U.S.C. § 1343. This opinion addresses Alpha's challenge to the District

---

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

Court's forfeiture order.[1] For the following reasons, we will vacate the District Court's

forfeiture order and remand for further proceedings consistent with this opinion.[2]

## I.

Alpha argues that the District Court erred in ordering forfeiture of the *entire profit*

*amount* on the contracts. The government sought criminal forfeiture of Alpha's wire

fraud proceeds under 28 U.S.C. § 2461(c) and the civil forfeiture provision, 18 U.S.C. §

981(a)(1)(C).[3] The government also sought recovery of substitute assets under 21 U.S.C.

§ 853(p) in the event that Alpha's forfeitable property could not be located. The District

Court imposed forfeiture of $10,906,553, representing one-half of the $21,813,106 gross

profits received by Appellants from the Philadelphia Projects.

### A. Applicable Burden of Persuasion

As a preliminary matter, the parties dispute the burden of persuasion under the

Court's forfeiture order. We now clarify that the government must prove its forfeiture

allegations by a preponderance of the evidence. As we explained in *United States v.*

*Voigt*,[4] the reason the government is held to a higher burden in RICO cases is because

RICO's forfeiture provisions are unprecedented in their nature and breadth, "sweep[ing]

---

[1] Alpha and Kousisis also appealed the District Court's (1) denial of their motion for judgment of acquittal, (2) jury instructions, and (3) loss calculations at sentencing. We resolved these issues in a separate precedential opinion. *See* Case No. 19-3679, Dkt. No. 131 and Case No. 19-3774, Dkt. No. 121.

[2] The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231. We exercise appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[3] § 2461(c) integrates § 981 into criminal proceedings. *See United States v. Contorinis*, 692 F.3d 136, 145 n.2 (2d Cir. 2012).

[4] 89 F.3d 1050 (3d Cir. 1996).

far more broadly than the elements of the substantive RICO offense itself."[5] Therefore, "since the identity and extent of property subject to forfeiture will not have been addressed in the course of proving the substantive RICO charge, a reasonable doubt burden of persuasion ensures greater accuracy in determining the scope of property subject to forfeiture."[6] That reasoning does not apply to prosecutions for mail or wire fraud.

Similar to the money laundering charge in *Voigt*, Alpha's wire fraud conviction entitles the government only to property which represents or is "traceable to" the fraudulent activity.[7] "Unlike the RICO context, we have no reason to doubt that the amount of the transaction that forms the basis of a substantive [wire fraud] offense . . . will have been proved beyond a reasonable doubt at trial."[8] Thus, a preponderance of the evidence burden is appropriate in evaluating forfeiture for wire fraud. The District Court applied the correct test.

**B. Whether the Forfeiture Amount Represents the Proceeds of the Offense and the Government's Ability to Recover Substitute Assets[9]**

---

[5] *Id*. at 1084.

[6] *Id*.

[7] *Id*. at 1082; *see* 18 U.S.C. § 981(a)(1)(C) (allowing forfeiture of property "which constitutes or is derived from proceeds traceable to" the offense).

[8] *Id*. at 1084.

[9] The government contends that Alpha's challenge regarding the forfeiture amount and proceeds of the offense must be reviewed for plain error, on the ground that this argument was not raised before the District Court. This is false. Alpha challenged the forfeiture amount on this basis in its response in opposition to the government's motion for order of forfeiture. It then referenced its response before the District Court at the sentencing hearing. *See* JA 3849 (". . . but I don't believe for the reasons stated . . . in Alpha's response that forfeiture is required here or appropriate, but I understand Your Honor's

Under § 981(a)(1)(C), when a person is convicted of violating § 1343, the District Court is directed to order the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" the wire fraud, as well as a conspiracy to commit the wire fraud under § 1349.[10] Alpha urges that the District Court erred in determining that the $10,906,553 figure constitutes proceeds traceable to the wire fraud, as "[t]his approach assumed that any profits were derived from the work PennDOT expected to be completed by a DBE."[11] We agree. As this Court has previously explained,[12] all of Alpha's gains were not "ill-gotten" since it always stood to lawfully profit from its own performance obligations in the Philadelphia Projects' contracts. It follows that requiring the company to forfeit all of its profits was improper.[13] We therefore remand for the District Court to conduct additional fact-finding and recalculate a forfeiture amount that more accurately represents the proceeds Alpha received that should have been distributed to a genuine DBE. On remand, the District Court must bear

---

ruling."). Accordingly, we decline to review the District Court's determination here for plain error and instead will review its factual findings for clear error. *United States v. Cheeseman*, 600 F.3d 270, 275 n.4 (3d Cir. 2010).

[10] In particular, § 981(a)(1)(C) directs the forfeiture of property traceable to "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7). Under § 1956(c)(7)(A), "specified unlawful activity" encompasses "any act or activity constituting an offense listed in Section 1961(1) of this title." This includes wire fraud under § 1343.

[11] Alpha Opening Br. at 48.

[12] *See* Case No. 19-3679, Dkt. No. 131 at 27.

[13] *See United States v. Swanson*, 394 F.3d 520, 529 (7th Cir. 2005) (requiring the evidence to be "explicitly clear that all of the funds listed in the government's forfeiture submission in this case were from illegal activity").

in mind that "[w]hen a business has both lawful and unlawful aspects, only the income attributable to the unlawful activities is forfeitable."[14]

Although the District Court erred in ordering Alpha to forfeit $10,906,553, we do agree with its decision to permit the forfeiture of substitute assets. Pursuant to 21 U.S.C. § 853(p), a District Court may order forfeiture of substitute assets if, "as a result of any act or omission of the defendant," illicitly obtained property "has been transferred or sold to, or deposited with, a third party,"[15] or "has been commingled with other property which cannot be divided without difficulty."[16] Here, it is highly conceivable that the government would experience difficulty recovering the exact dollars received as a result of Alpha's fraud, particularly because Alpha used the government's funds to pay both Markias and the true providers of the paint supplies.[17] Moreover, it may be difficult to distinguish fraudulently obtained dollars from legally earned ones because Alpha lawfully profited from other business transactions.[18] Therefore, the District Court's

---

[14] *United States v. Hodge*, 558 F.3d 630, 635 (7th Cir. 2009); *see also United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019) (holding prosecution must show that "each and every service was fraudulent" if some evidence in record suggests legitimate services); *United States v. Genova*, 333 F.3d 750, 763 (7th Cir. 2003) ("[O]nce the defendant has contended, with some evidentiary support, that at least some of the value in a given asset came from lawful, nonforfeitable sources, then the prosecutor must demonstrate how much is forfeitable.").

[15] 21 U.S.C. § 853(p)(1)(C).

[16] 21 U.S.C. § 853(p)(1)(E).

[17] *See* JA 2023–24 (Markias' owner testifying at trial that Markias was paid a "2.25 percent markup" on each invoice for its services and received one check to keep, and another to remit to the real vendor in exchange for goods).

[18] *See, e.g.*, ECF Dkt. No. 200 (Alpha Sentencing Memorandum) at 62-63 (letter from third-party business referencing the company's "lasting relationship" with Alpha); *see also id.* at 55 (Oct. 21, 2019 report describing Alpha's legitimate business dealings and referencing projects involving "lead abatement and [the] recoating of bridges").

determination that the government was entitled to forfeiture of substitute assets was not clear error.[19]

### C. Whether the Government is Entitled to a Money Judgment Forfeiture Order[20]

Alpha also asserts that the District Court erred in granting the government's request for a forfeiture money judgment. It claims that pursuant to the Supreme Court's decision in *Honeycutt v. United States*,[21] forfeiture money judgments are not authorized under § 981(a)(1)(C), § 2461(c), and § 853. We find no support for this argument.

The crux of Alpha's contention is that § 981(a)(1)(C) and § 2461(c) "permit forfeiture only of specific and identifiable proceeds of crime," and, therefore, money judgments are inapplicable under these statutes.[22] Alpha further emphasizes that in *Honeycutt*, the Supreme Court concluded that a criminal defendant can only be liable to forfeit proceeds from an offense that he personally obtained.[23] While this is true, Alpha ignores the distinguishable context in which *Honeycutt* was decided. There, the Supreme Court was concerned with whether a defendant may be held jointly and severally liable

---

[19] The government's brief relies exclusively upon subsection 853(p)(1)(D) for the proposition that it may obtain substitute assets. In the District Court, however, the government did not argue that subsection (D) applied. Because arguments based on subsection (D) were not presented to the District Court, we deem the argument waived and decline to consider it. *See Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021), *cert denied*, 142 S. Ct. 760 (2022).

[20] We review this argument for plain error, as Alpha conceded that it did not raise this issue before the District Court.

[21] 581 U.S. 443 (2017).

[22] Alpha Opening Br. at 51.

[23] *Honeycutt*, 581 U.S. at 454.

under § 853 for property acquired by his co-defendant.[24] It did not expressly examine whether money judgments are allowed in the criminal forfeiture context.[25] Accordingly, we will apply our existing precedent under *United States v. Vampire Nation*,[26] which holds that forfeiture money judgments are permissible. We conclude that the District Court did not commit plain error in issuing a forfeiture money judgment against Alpha.

## D. The Excessive Fines Clause of the Eighth Amendment

Finally, we must consider whether the forfeiture order was constitutionally excessive.[27] To its credit, here, the District Court realized that its forfeiture order may be disproportionate to the gravity of the wire fraud offenses that forfeiture is designed to punish. The Court stated:

> I'm going to sign this forfeiture order, but I do encourage the government to take heed of what I have said here today, which is in essence that it would not behoove society at large or the individuals who work at Alpha to do anything that would result in the closure of the company. And I know that there is flexibility in terms of obtaining forfeiture funds, and I encourage the government to exercise that flexibility.[28]

---

[24] *Id.*

[25] Moreover, we observe that several other circuit courts have likewise declined to read *Honeycutt* as placing a sweeping prohibition on forfeiture money judgments. *See, e.g., United States v. Nejad*, 933 F.3d 1162, 1164–67 (9th Cir. 2019); *United States v. Elbeblawy*, 899 F.3d 925, 940–41 (11th Cir. 2018); *United States v. Gorski*, 880 F.3d 27, 40–41 (1st Cir. 2018).

[26] 451 F.3d 189, 198–203 (3d Cir. 2006).

[27] Alpha's assertion that the forfeiture order violates the Eighth Amendment is a question of law subject to plenary review. *United States v. Various Computs. & Comput. Equip.*, 82 F.3d 582, 589 (3d Cir. 1996).

[28] JA 3848.

The outer limits of forfeiture orders are circumscribed by the Eighth Amendment's prohibition of excessive fines.[29] A civil penalty violates the Excessive Fines Clause if it is "grossly disproportional to the gravity of the defendant's offense."[30] In *United States v. Bajakajian*, a defendant pled guilty to failing to report exported currency.[31] The government sought forfeiture of the entire currency amount that the defendant failed to declare.[32] The Supreme Court held that, under the circumstances there, ordering forfeiture of the entire amount would violate the Excessive Fines Clause.[33] "According to the Court, the 'touchstone of the constitutional inquiry . . . is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.'"[34] The *Bajakajian* Court considered four factors (the "*Bajakajian* factors") to analyze proportionality: (1) the essence of the crime and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct.[35]

Although the District Court here presciently acknowledged the potential impact of its forfeiture order on Alpha's employees, it neither applied the *Bajakajian* factors nor

---

[29] *See United States v. Bajakajian*, 524 U.S. 321, 327–28 (1998); *Cheeseman*, 600 F.3d at 282–83 (applying *Bajakajian* to civil forfeiture).
[30] *Bajakajian*, 524 U.S. at 337.
[31] *Id*. at 324–25.
[32] *Id.* at 326, 344.
[33] *Id*. at 324.
[34] *Cheeseman*, 600 F.3d at 283 (quoting *Bajakajian*, 524 U.S. at 334).
[35] *See Bajakajian*, 524 U.S. at 337–39.

made factual findings regarding them.[36] Although we could theoretically evaluate some of these factors based on this record (such as the maximum sentence and fine that could have been imposed), we think it is better for the factors to be applied by "the district courts in the first instance."[37] Accordingly, we will vacate the forfeiture order and remand to the District Court for consideration of the *Bajakajian* factors.

## II.

For the above reasons, we will vacate the District Court's forfeiture order and remand for further proceedings consistent with this opinion.

---

[36] *See Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424 (2001) (considering the Eighth Amendment's prohibition against excessive fines in the context of a damages award against a company).

[37] *Bajakajian*, 524 U.S. at 336.